MERCANTILE-COMMERCE BANK AND TRUST COMPANY, Trustee Under the Last Will and Testament of PAUL BROWN, Deceased, Appellant, v. DOROTHY BROWN MORSE and FRANK C. RAND ET AL., Trustees of Barnes Hospital.—No. 39823.—201 S. W. (2d) 915.

Division One, April 21, 1947.

Rehearing Denied, May 12, 1947.

*Thompson, Mitchell, Thompson & Young, Samuel A. Mitchell* and *Edgar H. McCulloch* for appellant.

338

*J. C. McManaway* and *John C. Tobin* for respondent Dorothy Brown Morse.

340

 DOUGLAS, P. J.—This suit was brought by the Mercantile-Commerce Bank and Trust Company, successor to the Mercantile Trust Company, Trustee under the will of Paul Brown for instructions in the allocation of trust funds to income and principal in view of the resulting effect upon the respective rights of the life beneficiary and the remainderman.

Defendants are Dorothy Brown Morse, the life beneficiary, and the Trustees of Barnes Hospital which is the remainderman.

The trust company seeks guidance and instructions as to its duty or discretion in several accounting practices: (a) amortizing premiums paid for bonds out of payments of interest received on the bonds; (b) where the premium paid for a bond is small, such as $10 or less, charging the full amount of such premium immediately upon purchase of the bond against available income instead of amortizing it out of periodic payment of interest; (c) crediting excess of amount realized over purchase price, where bonds have been purchased at a discount and paid or sold for par or more, to corpus rather than to income; and (d) crediting excess of sale price over the amortized or investment value to corpus rather than to income.

Dorothy Brown Morse, the life tenant, has objected to these accounting practices, and contends that she is entitled under the will to the coupon rate of interest received on bonds without diminution for amortization of premium; to any excess received over the investment value when a bond is sold; and to any excess received over purchase price of a bond bought at a discount. Her general contention is that the will intended she should receive the full amount of income and revenue produced by the trust estate, regardless of the fact that thereby the principal of the trust be diminished or encroached upon.

Paul Brown's will first made several specific bequests including one of $100,000 to Barnes Hospital, one of the same amount to the St. Louis Children's Hospital, and one of the same amount to the St. Louis Maternity Hospital. He divided his residuary estate among the members of his family leaving a one-sixth part in trust with the trust company for the equal benefit of Dorothy Brown Morse and her half brother, Paul Brown, III.

The provisions of the will which may be pertinent to this case are as follows:

"The one-sixth (1/6) bequeathed and devised unto the Mercantile Trust Company, a corporation of the City of St. Louis, Missouri, under clause 'f' of this item (twenty-one) of my will, is to be held by the said corporation IN TRUST, for the following uses and purposes, that is to say:

"(1) To hold, possess, manage and control the said trust estate and every part thereof, with full power to sell, transfer, convey and dispose of the same, upon such terms, and in such manner, and for such prices, as to my Trustee shall seem meet and proper.

"And I do give and grant unto my said Trustee full power and authority to invest and reinvest all or any part of said trust estate which may come into its hands, in such manner, and in such securities, or other property, personal or real (except in non-interest bearing or speculative securities) and upon such terms, and for such length of time, as to my Trustee shall seem meet and proper; it being intended hereby to give unto my said Trustee full and complete authority to hold, possess, manage, control, sell, convey, encumber, lease, invest and reinvest (except in non-interest bearing or speculative securities), the whole and every part of said trust estate, according to its sole judgment and discretion.

"(2) I direct my Trustee to divide the said one-sixth (1/6) held for the benefit of the children of my deceased son, Paul Brown, Jr., into two (2) equal parts, and to set apart one (1) of said portions, IN TRUST, for the benefit of my grandson, Paul Brown, III, and to set apart the other portion, IN TRUST, for the benefit of my granddaughter, Dorothy Brown, upon the terms and conditions hereinafter set out.

"(3) I direct my Trustee to pay over, from time to time, so much of the net income and revenue derived from the portion held by my Trustee, IN TRUST, for my grandson, Paul Brown, III, as in the judgment of my Trustee shall be needful and proper for the maintenance, education, comfort and support of my said grandson, until he attains the age of thirty (30) years.

"(4) As and when my said grandson attains the age of thirty (30) years, I direct my Trustee to pay over, deliver and convey unto him one-half (½) of his portion of the trust estate, together with one-half (½) of the unexpended accumulated income therefrom, if any, and to continue to make payments, as above provided, for his benefit, until he attains the age of thirty-five (35) years.

"(5) As and when my said grandson attains the age of thirty-five (35) years, I direct my Trustee to pay over, deliver and convey unto him the balance of his portion of the trust estate, and accumulated income, if any, remaining in its hands.

"(6) The manner of the payment of income to my said grandson, and the amount to be paid to him during the existence of this trust,

shall rest in the discretion of my Trustee, and its judgment in that regard shall be final.

"(7) In the event my said grandson desires to establish himself in business, or to purchase an interest in a business already established, my Trustee, in its discretion, may advance to my said grandson, out of his portion of the trust estate, or for his use and benefit, a sum not to exceed Fifty Thousand Dollars ($50,000) for such purpose. . . .

"(12) I direct my Trustee to pay over, from time to time, so much of the net income and revenue derived from the portion held under this item of my will by my Trustee, IN TRUST, for my granddaughter, Dorothy Brown, as in the judgment of my Trustee shall seem meet and proper, for the maintenance, education, comfort and support of my said granddaughter, until she attains the age of twenty-five (25) years; the unexpended income shall be added to and become part of the corpus of the trust estate herein created for her benefit.

"(13) As and when my said granddaughter attains the age of twenty-five (25) years, I direct my Trustee to pay over the entire net income and revenue derived from her portion of the trust estate unto her, during her life.

"(14) As and when my said granddaughter attains the age of thirty (30) years, I direct my Trustee to pay over, deliver and convey unto her one-eighth (⅛) of her portion of the trust estate then in its hands, free of trust.

"(15) As and when my said granddaughter attains the age of thirty-five (35) years, I direct my Trustee to pay over, deliver and convey unto her one-eighth (⅛) of her portion of the trust estate then in its hands, free of trust.

"(16) The balance of her portion of the trust estate remaining after such payments, shall be held by my Trustee during the life of my said granddaughter

"(17) Upon the death of my granddaughter, Dorothy Brown, I direct my Trustee to pay over, deliver and convey her share of the trust estate remaining in its hands unto her descendants, per stirpes and not per capita.

"(18) In the event my said granddaughter leaves no descendants her surviving, I then direct my Trustee to retain her share of the trust estate in its hands, and it shall pass into and become a part of the trust estate established for the benefit of my grandson, Paul Brown, III, or in the event the trust established for his benefit shall have terminated, then my Trustee shall pay over, deliver and convey said trust estate, absolutely, unto Paul Brown, III, or unto his descendants. ·

"(19) In the event of the death of Paul Brown, III, before the termination of the trust established for his benefit, and upon the death of Dorothy Brown, neither leaving descendants surviving, then I direct my Trustee to pay over, deliver and convey the entire trust

estate unto Barnes Hospital, of St. Louis, Missouri, to become a part of the fund hereinabove provided in ITEM THIRTEEN of this my will, to be known as the 'Paul Brown Endowment.'

"(20) I direct that all inheritance, estate, transfer or succession taxes assessed by the United States Government, or any State of the Union, against the trust estate herein established for the benefit of the children of my son, Paul Brown, Jr., shall be paid out of the principal of the trust estate.

"(21) In all cases in which I have given direction to my Trustee, or in which I have required the performance of certain conditions precedent to the taking effect of any bequest herein made, the decision of my Trustee on any question of fact and in all matters of discretion shall be final and conclusive upon the persons named in this my will.

"(22) The payment of income hereunder shall commence on the fifteenth day of the second month after my decease.

"(23) My Trustee shall have power to determine whether any money or property coming into its hands shall be considered part of the principal of said trust estates or a part of the income therefrom, and to apportion between such principal and income any loss or expenditure in connection with such trust estates, which in its opinion should be apportioned, and as to it may seem just and equitable.

"(24) I authorized my Trustee to treat all extra-ordinary cash dividends as entirely income, also to treat as part of my trust estates, income, dividends paid to my representatives after my death, irrespective of the date of the declaration of such dividends, in order that the beneficiaries of the trusts may enjoy the full amount of income, regardless of the fact that such dividends might possibly encroach upon the principal of the trusts.

"(25) All transfers, assignments, pledges and mortgages of any beneficiary of his interest shall be void and of no effect, and such interest shall not be subject to any debt or liability of the beneficiary, nor subject to attachment, garnishment or execution under any suit at law or in equity. During the pendency of any suit against any beneficiary, all right of such beneficiary to any payments out of the trust estates shall stand suspended and be null and void. However, in its discretion, the Trustee may apply such payments for the maintenance and health of the beneficiary while involved in any suit."

At present we have this situation. Paul Brown, III died before the termination of the trust created for his benefit leaving no descendants so that his portion of the trust estate is now held for the benefit of Dorothy under the same terms and conditions as her own original portion. Distributions of portions of corpus have been made to Dorothy under paragraphs 14 and 15. Distributions of income are now being periodically made under paragraph 13. Dorothy is married but has no children. In the event Dorothy dies leaving no

descendants, Barnes Hospital, the remainderman, is the ultimate beneficiary.

The evidence shows that the trustee received as assets of the trust estate 1,166 shares of the common stock of the Paul Brown Investment Company which had an earned surplus of over $100 per share and a distributable surplus, earned and paid in of over $500 per share. Other assets of the trust estate were stock in companies which held large distributable surpluses. The distributable surpluses were invested largely in stocks and securities of other corporations. Paul Brown, the testator, was familiar with corporate procedure. He knew and contemplated that such distributable surpluses in stock would be distributed as dividends, and that such distributions would materially reduce the capital value of his trust estate. Accordingly, Dorothy contends, and the trial court found, it was the testator's intention as found particularly in paragraphs 13 and 24 that the entire net income and revenue should be paid to Dorothy regardless of the fact such payments would encroach on the principal.

We do not believe these particular paragraphs of the will or any others support Dorothy's contention, which was sustained by the trial court.

The direction in paragraph 13 to pay Dorothy "the entire net income and revenue" does not evidence an intent to pay her what would ordinarily be considered as principal, and thus by those terms alone authorize an encroachment upon principal. We believe the choice of the words used is explained when read together with paragraph 12 immediately preceding. There the trustee was directed to pay Dorothy "so much of the net income and revenue" as it deemed proper until she reached twenty-five years; thereafter, under paragraph 13, she was to receive the full or entire net income and revenue as distinguished from so much of it as the trustee judged to be proper for her needs.

Nowhere in the will do we find the trustee directly authorized to encroach upon the principal of the trust estate except under paragraph 20 and in that instance only to the extent necessary to pay the taxes specified.

Paragraph 24 of the will is no general authorization to encroach upon principal nor can any such intention be read into it. This paragraph deals with two specific situations only. First it directs that extra-ordinary cash dividends shall be treated as income. Next, it directs that dividends paid to testator's representatives, after testator's death, irrespective of the date such dividends were declared should also be treated as income. Ordinarily dividends declared before the date of testator's death but not paid until after such date go into the corpus of a trust estate. Compare Selleck v. Hawley, 331 Mo. 1038, 56 S. W. (2d) 387. The testator was dealing only with "such dividends", and only to the extent that treating "such divi-

dends'' as income ''might possibly encroach upon the principal of the trusts.'' There is nothing in this paragraph which may be construed as authorizing the trustee to encroach generally or in any other instance upon principal.

Inasmuch as it is our determination that it was not the intention of the testator that Dorothy should receive any portions of the corpus of her estate outside of those specifically bequeathed under paragraphs 14 and 15, and the dividends described in paragraph 24, it follows that the decree of the trial court was in error in holding that the will was mandatory and specific in requiring the payment of all the revenue received from her estate to Dorothy, regardless of the fact such payments would encroach upon the corpus. Having reached such decision the trial court also erroneously decided the trustee could not amortize premiums. Since the decree must be set aside it becomes necessary for us to consider the practices about which the trustee is seeking guidance and instruction.

█ Since the will is silent as to the intent of the testator as to what generally shall constitute income and what corpus, such determination is a matter of law relating to the respective rights of the life beneficiary and the remainderman. See Estey v. Commerce Trust Co., 333 Mo. 977, 64 S. W. (2d) 608.

█ The first question upon which the trustee seeks guidance concerns its duty or discretion to amortize premiums. The trustee from time to time purchased bonds for the trust estate at a premium, that is at a price in excess of the face or principal amount of the bond. It then would amortize the premium under the so-called ''straight-line'' method of amortization which it describes as follows: ''The premium paid for such note, bond or other obligation was divided by the number of interest-payment periods thereof, namely, each 6-month period to the date of maturity or call or redemption date, and the result of such division was charged against income or interest received from such obligations on each semi-annual interest-payment date; thus, in the case of a 10-year one thousand dollar bond purchased at 105, or at a premium of $50.00, this premium was divided by twenty (which █ is the total number of semi-annual interest-payment periods to the maturity of such obligation) giving a result of this division of $2.50. As the interest was collected on each interest-payment date, said sum of $2.50 was charged against the total interest payments received on such date and credited to the corpus of said trust estate, thus reimbursing corpus from time to time until the entire premium of $50.00 was reimbursed or credited to corpus. In the event such bond, note or other obligation was redeemable at a time earlier than a maturity date specified therein, the number of interest-payment periods was calculated to the earliest callable date. In the event, however, such premium amounted to $10.00 or less, Appellant-Trustee ofttimes immediately charged the income account with the full amount of such pre-

mium and reimbursed corpus account in toto from the first available income. In the event such bond, note or other obligation so purchased at a premium was thereafter sold at a price in excess of the then 'carrying' value or then 'investment' value of such obligation, then such gain was credited to corpus and income was not reimbursed. The investment or carrying value of such bond, note or other obligation is regarded as the then amortized value at the time of sale, namely, the purchase price or cost of such bond, note or other obligation less credits to date paid on account of the amortization of the premium thereafter in the manner above described.''

In the period from 1931 to 1943 the sum of $54,230.20 was transferred from income to corpus to apply on the amortization of premiums. And on bonds already purchased additional amortization has been set up in the amount of $53,000.00 to be transferred from interest not yet payable.

In deciding whether such sums should be deducted from the principal of the estate, and thus lost by the ultimate beneficiary, or whether they should be amortized out of income collected and the principal thus kept intact, the trustee is under a legal duty to act with due regard to the respective interests of all beneficiaries both immediate and remote. In impartially exercising his duties to all beneficiaries a trustee is ordinarily required to make provision for amortization where he holds wasting property. Restatement of Trusts, Sec. 239. ''An everyday example of a wasting security is the bond purchased at a premium. . . . In this field the law is fairly well settled, viz.: if the trustee purchases bonds at a premium he is justified in amortizing the premium and in many jurisdictions must do so; . . . '' Loring, Trustees Handbook, 5th Ed. p. 194. ''Where the settlor has not manifested any intention as to who, as between life beneficiary and remaindermen, must bear the loss arising from the premium paid for the bonds, the courts are divided on the right of the trustee to take such premium out of income and thus to make the life beneficiary bear its amortization. The weight of authority is to the effect that any premium paid on bonds purchased by the trustee for more than their par value is to be charged to the income of life beneficiaries of the trust. The reasons given for the doctrine of amortization from interest coupons are that the fund is certain to be reduced by the amount of the premium at the maturity of the bonds; that that which is really income from a bond purchased at a premium and payable at a fixed time is not the amount received in interest annually, but rather is that amount, minus the sum necessary to restore, at the maturity of the bond, the premium paid; and a part of the amount received annually in interest is a return of the principal.'' 33 Am. Jur. ''Life Estates, Remaindermen, etc.'' Sec. 369.

This rule has been called the Massachusetts Rule because it was first announced in New England Trust Co. v. Eaton, 140 Mass. 532,

4 N. E. 69. It was reaffirmed in Old Colony Trust Co., Trustee v. Comstock, 290 Mass. 377, 195 N. E. 389, 101 A. L. R. 1. The latter case, after restating the rule announced in the earlier New England Trust Company case says of the rule: ". . . It is upheld by the great weight of authority elsewhere. In re Estate of Gartenlaub, 185 Cal. 648, 650, 651, 198 P. 209, 16 A. L. R. 520; Curtis v. Osborn, 79 Conn. 555, 560, 561, 65 A. 968; Ballantine v. Young, 74 N. J. Eq. 572,. 70 A. 668; In re Stevens, 187 N. Y. 471, 475, 476, 80 N. E. 358, 12 L. R. A. (N. S.) 814, 10 Ann. Cas. 511; In re Estate of Wells, 156 Wis. 294, 309, 310, 144 N. W. 174. There are, however, decisions to the contrary. Penn-Gaskell's Estate, 208 Pa. 346, 348, 57 A. 715; Hite's Devisees v. Hite's Executor, 93 Ky. 257, 268, 20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189; American Security & Trust Co. v. Payne, 33 App. D. C. 178. They do not seem to us to shake the soundness of our own; and the prevailing, rule."

The Massachusetts rule has been declared in recent cases to be the majority rule in Liberty National Bank v. Loomis, 275 Ky. 445, 121 S. W. (2d) 947, 131 A. L. R. 1419, (holding to the contrary), and in Sedgwick v. Sedgwick, 74 Ohio App. 435, 59 N. E. (2d) 611. See discussion of this rule and its related one on accumulating discounts in the following annotations: 4 A. L. R. 1249; 16 A. L. R. 527; 48 A. L. R. 684; 101 A. L. R. 7; 131 A. L. R. 1426.

A contrary rule with respect to amortizing premiums was announced by the Kentucky Supreme Court in Hite's Devisees v. Hite's Executor, 93 Ky. 257, 20 S. W. 778, 19 L. R. A. 173 and followed in Liberty National Bank & Trust Co. v. Loomis, 275 Ky. 445, 121 S. W. (2d) 947, 131 A. L. R. 1419. Under this rule premiums paid by the trustee are not amortized. We also note that discounts are not accumulated. Premiums and discounts are thus considered as capital losses and gains respectively. This rule is incorporated in the Uniform Principal and Income Act which has been adopted in Alabama, California, Florida, Louisiana, Maryland, North Carolina, Oklahoma, Oregon, Pennsylvania, Utah and Virginia. The same rule has been adopted in New York and applies to trusts created after September 1, 1942.

However, we believe the Massachusetts rule with respect to amortizing premiums to be the better rule. We hold that where the will is silent and the intention of the testator not ascertainable that it is the duty of the trustee, where bonds are purchased at a premium, to amortize the amount of the premium out of the periodic payments of interest received on the bond.

This rule is compatible with modern investment practices by which bonds are priced for purchase on a "yield" basis, par or face value having become no longer the prominent element in price fixing. It is now a generally accepted practice to purchase bonds on a "yield" basis. The "yield" is readily computable from bond tables which are available at all investment houses. The rule, in effect, makes the

"yield" the true return from the investment in which the cost price is the principal or amount invested. Thus the trustee is in a position to turn over to the remainderman at the proper time the corpus of the estate intact, subject only to market fluctuations in the value of the securities in which it is invested, thereby observing the requirement of impartiality to all beneficiaries.

We find no rule or reason in law to permit a trustee to charge the full amount of a small premium immediately against available income instead of amortizing such premium out of interest payments as received. We recognize the bookkeeping convenience of such a practice, but we may not, for that reason, apply a different rule unless the testator directs it.

We do not find the decisions support any rule requiring the accumulation of discounts where a bond is bought for less than its realized value and for crediting such discounts to income. Even the Uniform Principal and Income Act does not authorize the accumulation of discounts. The principle generally followed is since the life tenant cannot be charged with the depreciation in the value of the corpus of a trust estate, that the converse of such rule is also true, and he cannot receive the increase of the capital fund. We disapprove accumulating discounts unless directed by the testator.

We adopt and follow what was said on this subject in Old Colony Trust Company v. Comstock, 290 Mass. 377, 195 N. E. 389, 101 A. L. R. 1: "It is contended in behalf of the life tenant that, if there is to be amortization of premium bonds, there should also be accumulated and credited to income some part of the discount resulting from the purchase of bonds below par. The facts in the case at bar present this question clearly. In July, 1925, the trustees bought five per cent bonds of the United Electric Securities Company having a par value of $2000 and maturing in January, 1955, for $1920. These bonds were called for payment in January, 1928, and the trustees received therefor $2060. They credited principal with a gain of $140. They also purchased four and one-half per cent certificates of indebtedness of the United States having a par value of $13,000 for $12,973.13; these matured were paid at par, realizing $26.87 more than the cost, which was credited to principal. This question is a novel one in this Commonwealth. It is a matter about which provision might be made in the trust instrument. There is much force in the argument that as matter of pure logic, if there is to be amortization of premium bonds for the benefit of the corpus of the fund, there ought also to be accumulation out of discount for the benefit of the life tenant. That theory is strongly put in an annotation in 48 A.L.R. 689 to 710. There are, however, practical considerations which we think lead to the conclusion that such accumulation ought not to be made. There is in truth no fund out of which such accumulation from discount may be made. It is in the main the duty of the trustee to keep the corpus

of the trust fund invested. The discount is not in fact realized until the bond is paid either at maturity or on call. If the payment of the proportional increment of the discount is to be made to the life tenant with each installment of income, the money must be procured from some source. There is no obvious source from which it may rightly be obtained in the ordinary estate. . . .

No decision, so far as we are aware, supports this contention of the life tenant. There are several authorities rejecting it after consideration. In re Estate of Gartenlaub, 198 Cal. 204, 244 P. 348, 48 A. L. R. 677; In re Houston's Will, 19 Del. Ch. 207, 165 A. 132; Wood v. Davis, 168 Ga. 504, 148 S. E. 330; Townsend v. United States Trust Co., 3 Redf. Sur. (N. Y.) 220, approved in Matter of Final Accounting of Gerry, 103 N. Y. 445, 450-451, 9 N. E. 235.

The normal view is that gains in value of investments belong to capital and are to be credited to the principal of the trust fund rather than to income. The gain represented by discount realized by payment on call or maturity of a bond naturally falls within this rule. The application of this principle is simple. It avoids many difficulties as to accounting and as to payments of increment of expected but unrealized income to the life tenant. It is in accord with all the decisions of courts by which the subject has been considered. There is a possible appearance of inconsistency in allowing amortization of premium bonds to maintain capital and in denying allowance of discount on bonds for the benefit of the life tenant. We think that in this respect the decree was right. The practical advantages likely to flow from a simple rule, easy of comprehension and application, apparently based on experience and avoiding the possibility of impairment of the principal fund, overbalance the benefits of logical consistency." See also Restatement Trusts, sec. 240 h., Bogert, Trusts and Trustees, sec. 830, 33 Am. Jur. "Life Estates, Remainders, Etc." sec. 370.

Coming to the final question upon which the trustee is asking for instruction we find "the same general principle heretofore seen to be applicable to an increase in the value of property generally is held applicable in the case of bonds; any increase in the value belongs to the remainder estate in the absence of a contrary intent by the creator of the trust [citing cases]." 13 A.L.R. 1015. "The relative rights of the life beneficiary and the remainderman in an increase in value from a sale of the bonds above their accumulated or amortized value are discussed in the annotation in 13 A.L.R. 1015, and the authorities are there shown to be in accordance with the view here taken, that any such increase belongs to the corpus." 101 A.L.R. 37. We approve and adopt the rule that any increase over the amortized or "investment" value belongs to the corpus of the estate, and should not be allocated to income unless so directed by the testator.

350

■ The trustee seeks instructions in the alternative as to either its duty or discretion under the will in regard to the accounting practices we have been discussing. We have set out the rules which guide a trustee where the will is silent. Where, however, ■ a trustee is given the discretion to make apportionments between income and corpus, then it is ordinarily the duty of the trustee to exercise that discretion. We find the trustee of this will is given some discretion by paragraph 23 of the will.

A court in a proper case always has the power to instruct a trustee whether a contemplated act lies within the trustee's discretion. This does not involve exercising the discretion but determining whether it exists. After such fact is determined, the exercise of the discretion is a matter for the trustee. Nossaman, Trust Administration, sec. 443.

■ In some cases the discretion given to a trustee to make allocations between income and corpus is extremely broad. Such a case is Dumaine v. Dumaine, 301 Mass. 214, 16 N. E. (2d) 625, 118 A.L.R. 834, where the court held the trustee's discretion was not limited to instances where there was a question of doubt or no rule of law to follow. In construing such discretionary clauses, a primary concern of the courts has been whether or not the creator of the trust intended to empower the trustee to override established rules. See 50 Yale Law Journal, 1467. But again, each case is governed by the intention of the creator of trust.

The will before us indicates as a standard by which the trustee's discretion is to be guided is what "may seem just and equitable" to the trustee.

Applying this standard to the question of amortizing premiums the trustee may properly follow either one of the two established rules. Answering its specific question we say the trustee has the discretion to amortize premiums in the manner above described. On the question of accumulating discounts and crediting them to income, the rule appears to be settled that discounts are not accumulated and any excess realized from a bond is credited to corpus. The rule is also settled that any excess realized over the investment value of a bond should go to corpus. We are of the opinion that if the trustee should act contrary to these settled rules it would not be acting justly and equitably. Nor would it be acting justly and equitably should it charge small premiums immediately to available income. The trustee has no discretion to act contrary to what seems to it to be just and equitable.

Accordingly, the judgment of the trial court is *reversed* and the cause *remanded* with directions to the trial court to instruct the trustee in conformity herewith, and for such other orders and relief which are proper in the premises. All concur.