**Beulah M. COATES and Gordon R. Coates, Trustees Under the Will of William Waldren Coates, Deceased, Respondents,**

v.

**Beulah M. COATES and Gordon R. Coates, and Neligh C. Coates and W. W. Coates, Jr., Appellants.**

No. 45554.

Supreme Court of Missouri, Division No. 2.

Sept. 9, 1957.

was the wife of the testator and is the life income beneficiary of the trust. The other trustee, Gordon R. Coates, and the defendants, Neligh Coates and W. W. Coates, Jr., are brothers and sons of the testator by a former marriage. In the pleadings and throughout the trial several problems were raised but the essentially meritorious question is whether certain accretions, "capital gains" from four open end investment companies, should be credited to income and paid to Mrs. Coates, the life income beneficiary, or whether they should be credited to the principal of the trust and eventually divided between the remaindermen, the three sons. The trial court decreed that the accretions should be credited to income and two of the remaindermen-sons have appealed.

Under Mr. Coates' will, probated in 1947, the sum of $50,000 was bequeathed to the trustees, Mrs. Coates and Gordon. The net income from the trust was to be paid to Mrs. Coates semi-annually for life, the remainder to be divided between the three sons. The trustees were permitted to make certain investments but they "could not invest in the common stock of any company without the consent of Neligh C. Coates and W. W. Coates, Jr." In addition, the trustees were given "full power and authority to determine whether any money or other assets received or disposed of hereunder shall be considered part of the principal of the trust estate or part of the income thereof, or shall be apportioned between the principal and income of the trust estate." After Mr. Coates' death assets from his estate of the value of $50,000 were converted into cash and, with the consent of Neligh and W. W. Coates, Jr., invested in four open end investment trusts, Massachusetts Investors' Trust, Wellington Fund, Century Shares, and Chemical Fund. From July 17, 1950, through 1951 and 1952, Gordon Coates, as trustee, paid to Mrs. Coates, the life beneficiary, all cash dividends and "capital gains" received from the four companies as income. Early in 1953 his brother, Neligh, objected to this

Stinson, Mag, Thomson, McEvers & Fizzell, Lawrence R. Brown, Kansas City, for appellants.

Clay C. Rogers, Rogers, Field, Gentry & Jackson, Kansas City, Otto R. Erker, St. Louis, for respondents.

BARRETT, Commissioner.

This is a suit for a declaratory judgment by the trustees of a trust created under the will of William Waldren Coates. One of the plaintiff trustees, Beulah M. Coates,

distribution, contending that the capital gains were not income and should be credited to the principal of the trust. After Neligh's objections Gordon quit paying the capital gains to Mrs. Coates and, by reason of stock splits and the capital gains, the trust estate has almost doubled in value. The two appellant-remaindermen contend that the court erred in finding that they had "unqualifiedly consented" to the investment of the trust assets in the mutual funds companies and that the court erred in declaring as a matter of law that "capital gains dividends" could be treated as income. On the contrary, they contend, as a matter of law, that they are principal and not income.

■ Missouri is committed to the Massachusetts rule, that all cash dividends are income and all stock dividends are principal (annotations 130 A.L.R. 492, 524, 534; 44 A.L.R.2d 1277, 1292; 1948 Supplement, Restatement, Trusts, § 236), and therefore it is urged as a matter of law that these particular dividends must be treated as principal. Hayes v. St. Louis Union Tr. Co., 317 Mo. 1028, 298 S.W. 91, 56 A.L.R. 1276; Robert v. Mercantile Tr. Co., 324 Mo. 314, 23 S.W.2d 32; Selleck v. Hawley, 331 Mo. 1038, 56 S.W.2d 387; Mercantile-Commerce Bank & Trust Co. v. Morse, 356 Mo. 336, 201 S.W.2d 915. If the facts stated thus far were the only circumstances it might be that the rule would compel the allocation of these particular dividends to capital rather than income. The rule, however, is subject to being displaced by a contrary intention expressed by the testator (Hayes v. St. Louis Union Tr. Co., supra; 2 Restatement, Trusts, § 236; annotation 27 A.L.R.2d 1323), and the rule may not be so rigid as to preclude "relaxation in favor of broader principles of equity deemed to operate more justly and fairly in view of the particular facts." Annotation 130 A.L.R. loc. cit. 508.

■ The origin and precise character of these particular dividends is not made to appear and the parties, apparently, make no distinction in the "stock splits" and the "capital gains"; they are both treated as extraordinary stock dividends by the remaindermen. Annotation 44 A.L.R.2d loc. cit. 1297–1304. Certain it is, however, that all the dividends, cash or stock, were payable in either cash or stock at the election of the owner. For example, quoting from the literature of one of the companies, "Each stockholder can elect to receive the special distribution from realized net capital gains either (a) in additional shares of stock of the Company identical with the stock presently held, or (b) in cash." And all the companies recommended and importuned their shareholders, particularly fiduciaries, that "they accept payment of this distribution in shares at net asset value rather than in cash." But under the Restatement of the Law of Trusts and under the Uniform Principal and Income Act, both of which have also adopted the Massachusetts rule, "if the trustee has the option of receiving a dividend either in cash or in the shares of the declaring corporation, the dividend is income irrespective of the choice made by the trustee." 1948 Supplement, Restatement, Trusts, § 236(c); Uniform Principal and Income Act, § 5(1); 4 Bogert, Trusts, § 846; 3 Scott, Trusts, § 1817. It was held, under the New York Personal Property Law, that the "capital gains" dividends by the Massachusetts Investors' Trust was "not a stock dividend" and was payable to the life income beneficiary of the trust. In re Hurd's Will, 203 Misc. 966, 120 N.Y.S.2d 103; In re Byrne's Estate, 192 Misc. 451, 81 N.Y.S.2d 23; In re Bruce's Estate, 192 Misc. 523, 81 N.Y.S.2d 25. But in view of our failure to observe the distinctions necessitated by the precise origin and character of the dividends and the lack of necessity of precisely delimiting the general rule, the case need not be resolved on these grounds alone and, as we have said, these were not the only circumstances.

The testator did not expressly provide for the investment of the trust funds in common stock; he made it possible for the

trustees to so invest the funds but only with the consent of the two remaindermen. They admit, of course, their consent to the investment in the particular funds but they contend that their consent was not "unqualified," meaning that they did not consent or agree that all profits or accretions, and particularly "capital gains," should be paid to the life beneficiary as income. But in addition to the facts previously stated and in addition to Gordon's so construing the trust during 1950, 1951 and 1952, the fact was that Gordon, Neligh, and W. W., Jr., had at least three personal conferences and several telephone conversations concerning the nature of the investment to be made. They consulted a broker and he first presented them with a $50,000 portfolio of common stocks but because of the difficulty of management and the fact that the parties lived so far apart the common stock investment was rejected. Mrs. Coates was not present at any of these conferences and she testified that she relied on her stepsons, particularly Neligh. The common stock portfolio being rejected, the broker, at the suggestion of the Coates brothers' accountant, presented a portfolio of four mutual funds companies and, after one change, these four companies were selected by the three brothers. The broker says that he explained to them the type and character of the returns to be expected, explaining very carefully the difference in "cash dividends" and "capital gains." It was his view that the "capital gains" were principal and were to be so treated in the administration of the trust. He told them that they could expect in ordinary dividends a return of about 4½%. That, in substance, was also the testimony of W. W. Coates, Jr. Neligh did not testify. Gordon said that the subject of capital gains as a part of income or of principal was not discussed and he treated all returns as income. But, whatever the broker may have advised the brothers, this is what he wrote in submitting the plan to Mrs. Coates: "I have just completed a conference with your sons, and *have been authorized to present to you the following investment program covering*

the principal amount of $50,000." He then listed the number of shares in each company, prices and totals. Then he said, *"The dividends paid by these stocks, including capital gains,* in the year 1949, *were as follows,"* listing them on a per share basis. Then he said, on the basis of the number of shares in each company and assuming the payment of dividends of at least the same rate in 1950, "the income from the investment would be $2,071.14," or "an investment return of 4⅛% plus." And, in testifying, he admitted that the figure of $2,071.14 included capital gains as well as cash dividends.

In these additional circumstances it it not necessary to elaborately demonstrate all the permissible inferences and consequences or to characterize the conduct of the parties. In his letter to counsel, in which he announced his tentative views later to be reduced to a specific finding and judgment, the court said that there was evidence that Neligh and W. W., Jr., gave their consent "with the qualification that capital gains thereon should not be paid to the beneficiary, Beulah M. Coates, but retained as part of the corpus, or, to use the term of the will, principal. *I do not believe that the consent given at the time these stocks were purchased was so qualified, and so find."* So as to this particular and significant finding it is not possible for this court to reasonably make another and contrary finding. V.A.M.S. § 510.310. The allocation of capital gains to income was consistent with the terms of the will, the testator made possible the investment and he made it possible for the two trustees and the two remaindermen, who in consenting to the initial investment were to that extent trustees, to interpret and give particular force and meaning to the terms of the will and, in short, to agree and consent to the allocation to income. The two contesting remaindermen, with full knowledge of the nature of the investment as well as the returns, the life beneficiary having only such knowledge as their broker imparted to her, voluntarily and knowingly gave up

to the life beneficiary the items in question and accordingly are bound. Scullin v. Clark, Mo., 242 S.W.2d 542, 29 A.L.R.2d 1024; Newton v. Rebenack, 90 Mo.App. 650; Oellien v. Galt, 150 Mo.App. 537, 131 S.W. 158; annotation 29 A.L.R.2d 1034; Lipsitt v. Sweeney, 317 Mass. 706, 59 N.E. 2d 465.

Accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.