Geraldine DEUTSCH, et al., Respondents,

v.

Eugene L. WOLFF, et al., Appellants.

No. 81296.

Supreme Court of Missouri,
En Banc.

June 29, 1999.

Mark G. Arnold, Michael H. Wetmore St. Louis, Stephen R. Swofford, Nancy G, Lischer, Chicago, IL, Terese A. Drew, St. Louis, for appellants.

Gerald P. Greiman, Daniel V. Conlisk, St. Louis, for respondents.

HOLSTEIN, J.

The beneficiaries of three trusts established by the will of Marvin Deutsch sued the trustee, Eugene Wolff, and the accountant for the trusts, Alan Wolff. In an extended bench-tried case, the Circuit Court of St. Louis County removed the trustee, disqualified the successor trustee, ordered an accounting, and awarded several money judgments. The trustee and accountant appeal only the money judg-

ments, which relate to two of the trusts created by the Deutsch will. This Court granted transfer after an opinion by the court of appeals. *Mo. Const. art. V, sec. 10.* The judgment is affirmed.

## I.

Marvin Deutsch (Settlor) and Eugene Wolff (Trustee) were close personal friends from 1948 until the Settlor's death in May 1972, and were partners in several ventures at the time of the Settlor's death. The Trustee was also a certified public accountant (CPA) and acted as the accountant for the Settlor. In May 1972, the Settlor died unexpectedly. His will created the two testamentary trusts involved in this appeal. It established a marital deduction trust, the Living Trust, for his wife, Geraldine, and the Family Trust for Geraldine and the three children. The Settlor appointed Geraldine and the Trustee as trustees of the Living Trust and the Trustee as sole trustee of the Family Trust. Geraldine Deutsch elected to delegate her responsibilities to the Trustee. The will provided for successor trustees who were attorneys of the law firm that prepared the will. In the event those persons were unwilling or unable to serve, it named Tower Grove Bank & Trust Co.

The will directed the Trustee to distribute income and authorized the Trustee, in his sole and uncontrolled discretion, to encroach upon the principal for the "need, comfort, or welfare of Geraldine" and the "education, need, comfort, welfare, maintenance and support" of the Family Trust beneficiaries. The will authorized the Trustee to "assist a beneficiary in establishing a business, household, or profession." Additionally, the will provided, "Whenever the Trustee shall be required or authorized by the terms of this instrument to make any decision, the Trustee's decision in the absence of fraud shall be final, binding and conclusive on all parties and interests and shall not be subject to review or challenge by any court of equity or law."

The primary original assets of the Living Trust were the Beau Jardin Apartments and the Willowbrook Shopping Center. The primary original assets of the Family Trust were four projects that the Settlor was developing through four partnerships, one for each project. Prior to his death, the Settlor was the managing general partner of each of the four partnerships, and the Trustee owned or claimed ownership in each of the partnerships. The four projects were Whispering Lakes Apartments, Oxford Hill Apartments, Sierra Vista Apartments and Village Green Apartments. Three of the four projects were still in various stages of development at the time of the Settlor's death. The trust owned 70% of Whispering Lakes, and the Trustee personally owned a 5% partnership interest in Whispering Lakes. The trust owned approximately 63% of the Oxford Hill apartments, and the Trustee personally owned at least a 7% interest. The trust owned 48% of the Sierra Vista Apartments, and the Trustee also claimed an ownership interest, but that claim was rejected by the trial court. The trust owned 48% of the Village Green Apartments, and the Trustee claimed an ownership interest, but that claim also was rejected by the trial court. The trial court found that the trust owned additional equitable interests in all but Whispering Lakes.

The Trustee elected to complete the construction of the projects that were incomplete at the time of the Settlor's death. The Trustee used Marvin Deutsch Enterprises (MDE) to complete the projects. MDE was wholly owned and operated by the Family Trust, and the Trustee directed MDE's activities. The Trustee also assumed the Settlor's role as the managing general partner of the apartment partnerships. By 1977, all of the apartment projects were completed. During the remainder of the trust's ownership of the apartments, the Family Trust, directed by the Trustee, oversaw the management of the apartment projects. The

trial court found that the Trustee spent "substantial time and effort overseeing the development and management of the apartment partnerships," and that Trustee "deserved substantial credit for the completion, management and ultimate sale of the apartment projects following the [Settlor's] death, which produced the foregoing benefits for the Family Trust."

In 1984, the partnerships sold two of the apartment projects and, in 1985, the remaining two projects were sold for an aggregate of $71,000,000. The Family Trust's share for this interest was at least $23,000,000. For the Living Trust, the Trustee converted 98 of the 182 Beau Jardin Apartment units into condominiums. He gave one unit to an employee of MDE and sold the rest.

The will provided for the compensation of the Trustee. "Any acting Trustee shall be entitled to compensation for his, her, or its services in accordance with such published schedule of fees as shall have been adopted by Tower Grove Bank and Trust Company and in effect at time such services are rendered." There is no dispute that Tower Grove Bank & Trust Co. subsequently became part of Commerce Bank and that the fee schedules of the bank relevant to the determination of the Trustee's fees were published in 1959, revised in 1976, 1983, 1985, 1988 and 1991.

The bank's fee schedule in effect in 1972 provided compensation for: (1) a percentage of principal under management; (2) management or sale of real estate; (3) an additional amount for unusual or special services. The 1976 version permitted: (1) 2% of "gross income collected"; (2) a percentage of principal; (3) "5 % of gross rentals collected (in lieu of percentages of principal and income)"; (4) an additional payment for "unusual, special, or extraordinary services." The 1983 version provided: (1) 4% of income; (2) a percent of principal; (3) 7% of gross rentals; and (4) payment for "unusual, special or extraordinary services." There is no objective stan-

dard in any of the schedules by which to measure compensation for unusual, special or extraordinary services. The fee schedules do not expressly mention compensation for a development of assets.

The sums paid or received by the Trustee for the twenty-two years between 1972 and 1993 were for fees, commissions, salary and proceeds of sale as follows:

1. Total Trustee's Fees

 Family Trust— $2,344,447 ÷ 22 = $106,566/year
 Living Trust— $1,274,594 ÷ 22 = $ 57,939/year
 $3,802,085 $164,502/year

2. Salary paid by MDE
 $823,200

3. Proceeds of sales of Trustee's interests in partnerships
 $2,288,500

4. Commissions paid by Family Trust on sale of partnership tax losses
 $200,000

5. Trustee's personal share of rents the Family Trusts paid a partnership in which Trustee was a partner
 $126,910

Alan Wolff (Accountant) is the son of the Trustee and, like his father, he is a CPA. Accountant provided accounting services for the Trusts from their inception and assisted in calculating the Trustee's fees.

The family believed that over the years, the Trustee collected a greater amount of trustee's fees than the trusts allowed and that the Trustee had collected other payments to which he was not entitled. In 1993, Geraldine and two of the three children beneficiaries, Charles Deutsch and Patricia Deutsch Ginsberg in their capacity as beneficiaries of the trusts, filed suit against the Trustee and the Accountant for repayment of the alleged overpayments. Richard Deutsch, a son and fourth beneficiary of the trusts, is a nominal defendant.

After an extended bench trial that produced over 3,000 pages of transcript and hundreds of exhibits, the trial court entered its judgment for the beneficiaries. The trial court removed the Trustee from acting in that capacity for any of the trusts and disqualified the Accountant from act-

ing as a successor trustee.[1]

The court found that the Trustee received a net of $1,511,071 in overpayment of trustee's fees and held the Trustee and the Accountant jointly and severally liable for repayment of that amount to the trusts. The trial court found the Trustee improperly claimed an ownership interest in the sale of Oxford Hill, Sierra Vista, and Village Green and ordered the Trustee to repay the Family Trust $933,396. The trial court found that the Trustee had improperly collected a 10% sales commission on sales of tax losses and ordered the Trustee to repay $200,000. The trial court found the Trustee made a self-interested loan in the amount of $183,224.50 and ordered the Trustee to repay the Family Trust that amount. The trial court found that the Trustee improperly charged the Family Trust for $95,850 of services and ordered the Trustee to repay that amount. The trial court also found that the circumstances of the case warranted a reduction in the Trustee's fees that otherwise would be payable and ordered the Trustee to repay the Living Trust $262,519 and the Family Trust $642,801. Finally, the trial court ordered the Trustee to provide a final accounting for each trust for which he served as Trustee and appointed successor trustees to whom the accounting was to be made.

## II.

The beneficiaries sued on their own behalf and the trust was not a named party to this action. However, paying the money judgments directly to the beneficiaries would violate the trust provisions. Therefore, the trial court ordered the judgments be paid directly to the trusts. On appeal, the Court of Appeals, Eastern District, *sua sponte*, concluded that the beneficiaries' interests were exclusively equitable and, thus, beneficiaries had no right to bring an action for money damages. Un-

der the court of appeals' analysis, the beneficiaries had standing to seek the removal of the Trustee and to seek an accounting. However, the court decided the successor trustee was the only party who would have a legal claim for money damages, and that action would lie only after a final accounting.

■ It is without dispute that the beneficiaries have standing to bring the equitable actions for removal of the Trustee, disqualification of the successor trustee, and for an accounting. *Restatement of the Law (Second) Trusts*, sec. 177, 197–199. Unquestionably, the claims for money damages should properly have been brought by a successor trustee. However, several unusual factors existing here justify an exception to the general rule. First, throughout the pre-trial process, both the Trustee and Accountant vigorously and successfully resisted appointment of a successor trustee "ad litem" for the purpose of pursuing the legal claims. Second, the Trustee and Accountant adamantly denied that their actions justified an accounting, removal of the Trustee or disqualification of the Accountant as successor trustee. Plaintiffs were required to establish their right to removal and disqualification by proving that the Trustee and Accountant had engaged in misconduct and that, as a result, the trusts had been damaged. Thus, the fact issues on the legal and equitable claims were identical. Third, neither the Trustee nor Accountant made any claim before the trial court that the proper party to assert the legal claims was a successor trustee, but instead both undertook a defense of the legal claims on their merits, including raising affirmative defenses. At oral argument, the Trustee confirmed that he did not desire dismissal of the legal claims on procedural grounds. "By joining issue with the plaintiffs [on the legal and equitable claims], the entire controversy was triable in equity." *Townsend*

---

**1.** Geraldine and the Trustee had executed new trust agreements that named the Accoun-

tant as successor trustee.

*v. Maplewood Investment & Loan Co.*, 351 Mo. 738, 173 S.W.2d 911, 913 (1943). Fourth, all present beneficiaries of the trusts were parties and had identical interests at stake. *See In re Estate of Remmele*, 853 S.W.2d 476, 481–82 (1993). Fifth, the pleading clearly alleged a breach of a fiduciary obligation, and assistance in that breach by the Accountant. *See Massie v. Barth*, 634 S.W.2d 208, 211 (Mo.App. 1982). Sixth, the money judgments were entered in favor of the trusts and may only be enforced by the successor trustee. Seventh, none of the dangers that usually inhere in permitting equitable owners to assert legal claims are apparent here. However, requiring a successor trustee to bring yet another action on behalf of the trusts may result in duplicate lawsuits, carrying with it the danger of inconsistent judgments as well as being inconsistent with modern notions of judicial economy. To allow the actions at law to be prosecuted with the equitable action is also consistent with the ancient doctrine that once equity acquires jurisdiction, it will retain it so as to afford complete justice between the parties. *Townsend*, 173 S.W.2d at 913–14.

The beneficiaries are not without risk in asserting these claims for money damages in connection with their equitable claims. A successor trustee may be collaterally estopped from bringing certain claims on behalf of the trusts against the Trustee and the Accountant. In addition, to the extent the beneficiaries assume the mantle of a successor trustee, they may also assume the successor trustee's liability for failing to adequately press claims the trusts might have. But we need not decide those issues today. It is sufficient to say that under the particular facts of this case, the beneficiaries have standing.

### III.

#### A.

■ The Trustee appeals the judgment for overpayment of trustee's fees. The Trustee claims the trial court should have adjudged the Trustee's use of the gross rental method for calculating trustee's fees by an abuse of discretion standard. The trial court's judgment will be sustained unless it is against the weight of the evidence, misstates the law or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The Trustee argues that the trial court misapplied the law. The will stated that any decision made by the Trustee pursuant to the terms of the trust "in the absence of fraud, shall be binding and conclusive on all parties in interest and shall not be subject to review or challenge by any court of equity or law." The Trustee argues that this language only allows the court to reverse the Trustee's decision to assess fees under the gross rental method if the Trustee acted fraudulently or abused his discretion.

■ It is well settled that the law allows a settlor to confer upon a trustee broad discretion in decision-making. When a trustee is granted such discretion by the trust document, that discretion "is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." *First National Bank of Kansas City v. Hyde*, 363 S.W.2d 647, 655 (Mo.1962) (quoting *Restatement (Second) of Trusts* sec. 187). Later cases expounded on what constitutes abuse of the trustee's discretion and incorporated language from Comment (e) of the Second Restatement. *See, e.g., American Cancer Society v. Hammerstein*, 631 S.W.2d 858, 863 (Mo. App.1981) ("[A] court must not interfere unless the trustee, in exercising his power, willfully abuses his discretion or acts arbitrarily, fraudulently, dishonestly or with an improper motive.").

■ Regarding the trustee fees in the present case, however, the trust document did not vest the broad discretion that the Trustee argues it did. The document specifically stated that particular fee schedules, those used by Tower Grove Bank, must be used to determine proper fees. Thus, the Trustee did not have the discre-

tion to determine the method for calculating the fees, as he claims. The Trustee was not free to misinterpret or ignore the bank's fee schedules mandated in the trust document. Therefore, the trial court did not apply an incorrect standard of review.

■ The Trustee also argues that had the bank been the trustee, it would have charged an additional fee for management of real estate. The Trustee claims he should be given credit for substantial sums for services performed by him in addition to the ordinary trustee fees. In support of that contention, he points to portions of the fee schedules permitting additional fees for management of real estate. He also relies on the testimony of a bank representative and one of the CPA's called by the beneficiaries that had the bank acted as manager of the real estate, it would have charged additional fees. However, the Trustee was paid a salary for his services as managing partner of the partnerships that owned the real estate. While the salary from the partnerships may have been less than one would pay an outside management firm for similar services, the Trustee was not free to make up the difference by overcharging the trusts. Moreover, the bank representative testified that it " ... would analyze the situation on the front end, and then have discussed it with the Beneficiaries ... and hopefully, reach some agreement as to how all of this [the management fees] would be assessed." Here, the Trustee apparently did not follow that procedure but made decisions regarding the fees unilaterally. He made no effort to segregate his real estate management fees from his ordinary fees, as the bank would have done. The trial court had substantial evidence indicating that no additional trustee's fees for management of real estate would have been charged by the bank where the real estate was under the management of the partnerships that owned the real estate. Giving due deference to the trial judge's superior opportunity to assess the credibility of the witnesses, he did not err in finding the Trustee's fees were in excess of those that would have been allowed the bank had it been Trustee. As previously noted, the Trustee had no discretion to charge more than the bank would have charged under the same circumstances.

## B.

■ The Trustee also appeals the judgment for the $740,480 in sales proceeds from the sale of Oxford Hill, Sierra Vista, and Village Green partnerships. The trial court found that the Trustee failed to prove that he was a beneficial owner of the corporate minor general partners of these partnerships and, thus, was liable for the proceeds he had collected from their sale. The Trustee argues that the trial court erred because the five-year statute of limitations of section 516.120(1) bars this particular claim and that the trial court erred by putting the burden of proving ownership on the Trustee.

The Trustee argues that he had claimed ownership of the stock in question before Marvin Deutsch's death and before the trusts existed; therefore, the beneficiaries' claim for these sale proceeds was a constructive trust claim and section 516.120(1) requires the claim be brought within five years. The last of the partnerships in question was sold and the last of the proceeds in dispute distributed to the Trustee in 1985. The beneficiaries did not file suit until 1993. Therefore, the Trustee argues the claim is time-barred. The beneficiaries argue that the Trustee distributed the sale proceeds in his capacity as the Trustee; therefore, section 456.220, which governs claims by beneficiaries against trustees applies, and their claim is not yet barred by the statute of limitations of section 456.220.

The difficulty in determining the appropriate statute of limitations arises because the Trustee and the trusts both had ownership interests in several of the same properties. It is undisputed that the trust owned the bulk of the properties and that the trust was the managing partner in the

properties. Therefore, the Trustee sold the properties as the Trustee and determined distribution by his own interpretation of ownership. According to the trial court, the Trustee determined his personal ownership interest incorrectly. This incorrect determination was in the capacity as the Trustee and, thus, falls subject to the statute of limitations of section 456.220. The Trustee does not argue that the statute of limitations of section 456.220 has run.

■ The Trustee also contends that the trial court erred in placing the burden of proving this determination of ownership on the Trustee. The Trustee's arguments are similar to those he made regarding the statute of limitations. The Trustee claims that the court should look at his ownership claim from the viewpoint of the Trustee's personal status. However, the beneficiaries have challenged his actions as Trustee. In this instance, the Trustee determined that he personally owned a 2% share of these partnerships. The Trustee produced no documentary evidence establishing his interest in the shares of the corporate minor general partners. Such documentary evidence as was available pointed to the Settlor as the beneficial owner of the corporate shares. Where a trustee has an individual interest in a transaction involving a trust asset, a trustee bears the burden of proving that his actions were proper and all doubts are resolved against him. *Hillyard v. Leonard,* 391 S.W.2d 211, 224 (Mo.1965). The trial court did not err in applying this legal standard to the Trustee's actions.

### C.

■ The Trustee also appeals the judgment of the additional 1% of the sales proceeds of Oxford Hills that the Trustee distributed to himself. The Trustee admits he unilaterally revised the partnership agreement, but argues that the trial court erred by not judging this decision under an abuse of discretion standard. The Trustee argues that Marvin Deutsch wanted the Trustee to take the additional 1% ownership and, thus, the Trustee's actions were not an abuse of discretion. This arguments mirrors the Trustee's earlier argument that the trial court should have applied an abuse of discretion standard.

The original partnership agreement giving the Trustee a 7% interest in the total Oxford Hills partnership was entered into while Marvin Deutsch was still alive. The Trustee modified the agreement several years after Marvin's death. It was not against the weight of the evidence for the trial court to find that the Trustee improperly transferred to himself the additional 1% interest in Oxford Hills.

### D.

■ The Trustee also appeals the $183,224.50 judgment for repayment of the loan the Trustee made from the assets of the partnership, in which the Trustee and one beneficiary were partners. The Trustee argues that the trial court erred in finding that this loan breached the Trustee's fiduciary duty to the trust and erred in finding that the trust was damaged by this loan.

■ Trustees owe an undivided loyalty to the trust and its beneficiaries, and any self-dealing will be carefully scrutinized. *Hillyard,* 391 S.W.2d at 224. In addition to the general discretionary powers discussed above, the trust document specifically gave the Trustee the "sole and uncontrolled discretion" to use the principal of the trust to "assist a beneficiary in establishing a business." The Trustee argues that because a beneficiary was also a partner in the business benefited by the loan, the loan was an attempt to help a beneficiary start a business and, thus, was specifically authorized by the trust document. While the document did give the Trustee great discretion in dealing with the beneficiary, the document does not remove the obligation that the Trustee operate only for the benefit of the beneficiary and to

avoid duplicity. The trial court did not err in finding that this loan was a breach of the Trustee's fiduciary duty.

The Trustee argues that the trust did not suffer damage from this loan because he treated it as a disbursement to the beneficiary. The trial court found that the trust was harmed in that by treating the loan as a distribution, the Trustee foreclosed any possibility that the $183,224.50 would ever be repaid to the trust. The trial court found further damage because the Trustee usually made in-kind distributions to all beneficiaries but, in this instance, did not make a commensurate distribution to the other beneficiaries. These findings by the trial court are not against the weight of the evidence.

### E.

The Trustee appeals the $95,850 judgment for amounts billed to a decorating company in which the Trustee's family owned a 75% interest. The Trustee argues that the finding of the trial court that the Trustee paid $20,000 of trust funds for work done for non-trust persons or entities, and paid $75,850 in "unexplained add-ons" was against the weight of the evidence. The trial court based its findings on the billing records of the decorating company that recorded the persons for whom the work was done and the testimony of a witness who testified that the Trustee had friends' houses painted by the decorating company. The trial court found that at least $20,000 of work paid for by the trust was done for non-trust persons or entities. The Trustee argues that this finding is against the weight of the evidence, namely his testimony that all work done for other persons was paid for by those persons, and the testimony of third parties that they personally paid for all work done by the company. It was not against the weight of the evidence for the trial court to find that despite this testimony, the payments were improper.

The trial court found that $75,850 was billed to the trust with no explanation. At trial, the Trustee did not explain these payments. It was not against the weight of the evidence for the trial court to find these payments were improper.

### F.

Finally, the Trustee appeals the $200,000 judgment for the sales commission the Trustee paid himself from the sale of certain tax losses related to the partnerships. The Trustee argues that the trial court erred by not finding that the payment of the commission was not an abuse of the Trustee's discretion. The Trustee argues that he and Marvin Deutsch had an agreement prior to Marvin's death that the Trustee would collect a 10% commission on such sales and that the Trustee was simply continuing to act on that agreement after Marvin's death.

Upon Marvin's death, his ownership of the tax losses passed to the trust. Therefore, agreements Marvin may have made regarding his tax losses during his lifetime became subject to the restrictions of the trust document. Therefore, the Trustee's compensation for dealing with the trust was limited to his trustee's fees as provided in that document.

### IV.

### A.

The Accountant appeals the judgment holding the Accountant jointly and severally liable for the overpayment of the Trustee's fees. The Accountant argues that there is no substantial evidence to support the judgments because there was no expert testimony that the Accountant breached the applicable standard of care.

The trial court found that the Accountant failed to adhere to generally accepted accounting principles in calculating income of the trust for purposes of determining the Trustee's fees. The Accountant calculated income by taking the gross rental income received by the partnerships

in which the trusts were partners and multiplying that by the percentage of ownership of the partnerships. Ronald Fisher, a vice-president and trust officer of Commerce Bank, Gregory Goltermann, a CPA, and Harvey Wallace, also a CPA, each testified that income for purposes of calculating trustee's fees is the net income of the partnerships actually received by the trust. Harvey Wallace further testified that the Accountant's method was a "gross miscalculation" and was negligent.

█ A CPA is a sufficient expert to establish what generally accepted accounting principles should apply and can testify as an expert as to whether another accountant failed to meet those standards. *See* sec. 326.060; sec. 326.210; 4 CSR 10–2.005(9)(b); and 4 CSR 10–2.150. The testimony of the two CPA's and the trust officer that the Accountant miscalculated income and Wallace's testimony that the Accountant violated generally accepted accounting principles is ample evidence to support the trial court's finding that the Accountant failed to use the degree of skill and learning ordinarily used by members of the accounting profession in calculating the fees.

The trial court also held Accountant jointly and severally liable for the overpayment of the Trustee's fees because the Accountant breached his fiduciary duties to the trust by choosing the method for calculating the Trustee's fees that would maximize the amount of fees payable to his father. The Accountant does not argue that he did not owe fiduciary duties to the trust and does not argue that the trial court's finding is insufficient to establish a breach of those fiduciary duties. The Accountant argues that the beneficiaries are limited to a malpractice action and cannot maintain a separate claim for breach of fiduciary duties. Because the judgment for malpractice is affirmed, this Court need not reach that issue.

### B.

The Accountant also argues that the trial court erred in holding the Accountant jointly and severally liable for the overpayment of the Trustee's fees in that it misapplied the law by applying section 456.770 instead of section 456.710. As described above, the trial court relied on the testimony of the trust officer and the two CPA's determination that the Accountant miscalculated the Trustee's fees. As additional support for that finding, the court took note of section 456.770, which states that under facts as in this case, the net profits of the partnerships are the income of the trust.

Section 456.710 states that a trust should be administered in accordance with the terms of the trust's instrument. The Accountant argues that because the trust instrument directed that the Trustee fees be administered according to particular bank schedules, it was improper for the court to rely on section 456.770. However, the trial court simply noted that the statutory method for calculating income to the trust was consistent with the method described by the trust officer and the two CPA's and, thus, gave further credibility to that method. The trial court did not err in noting section 456.770.

### C.

█ The Accountant appeals the judgment holding the Accountant jointly and severally liable for the overpayment of interest on unpaid Trustee's fees. The only money judgments for which Accountant was held jointly and severally liable were two judgments for overpayment of the Trustee's fees by the Family Trust and the Living Trust. Apparently, the trial court concluded that the trust owed the Trustee interest on some of the deferred trustee's fees he received. The Accountant had calculated that this interest should be at a certain interest rate. The trial court determined that the lower, statutory interest rate was the appropriate interest rate. The Accountant claims that he should not

be liable for the difference in the interest rate he calculated and that which the court used. However, the Accountant would have been liable for the full overpayment and has benefitted from this offsetting award of interest. This claim is denied.

### D.

 The Accountant argues that the five-year statute of limitation of section 516.120(4) bars the beneficiaries' claim for accounting malpractice and appeals the trial court's ruling that the statute of limitations had not yet run. The disputed issue in the present case is when the cause of action accrued and started the statute of limitations. Section 516.100 states that a cause of action under section 516.120(4) accrues "when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." In applying this language to professional malpractice by an architect, this Court has stated that a plaintiff does not have a duty to double-check the work of a professional that the plaintiff has hired so long as the professional relationship continued. *Martin v. Crowley, Wade and Milstead, Inc.*, 702 S.W.2d 57, 58 (Mo. banc 1985). A cause of action for professional malpractice cannot begin to run until the plaintiff knew or should have known for any reason to question the professional's work. *Id.*

The trial court found that the statute of limitations had not run against the beneficiaries because: (1) the damages were not sustained and capable of ascertainment prior to 1990 in that beneficiaries did not know or have reason to know of facts which should cause them to question the professional services; (2) the damages from the Accountant's malpractice was continuous in nature; and (3) the Accountant tolled the statute of limitations by concealing the cause of action. Any one of these findings is sufficient to affirm the trial court's denial of the Accountant's statute of limitations defense.

The Accountant does not claim that his father, the Trustee, had some knowledge or reason to know of the Accountant's malpractice that was imputable to the beneficiaries. Rather, the Accountant argues that beneficiaries knew or had reason to know of their cause of action for accountant malpractice in the mid–1980's. The Accountant claims that at that time, Marvin's widow questioned why the Trustee's lifestyle was improving and questioned the Trustee and that the Trustee refused to answer her questions. Marvin's widow asserted that this bothered her and that she was suspicious of the Trustee and intimidated by the Trustee. Even though all of the beneficiaries' suspicions were directed toward the Trustee, the Accountant claims that because he was the one calculating the fees, the beneficiaries' suspicion of the Trustee was suspicion of the Accountant.

 A general feeling of suspicion toward how the Trustee was handling the trust does not amount to knowledge of the trust accountant's malpractice. The Accountant did not present any evidence that the beneficiaries had any information to connect the misgivings about how the Trustee was handling the trust with Accountant's professional duties. The beneficiaries did take steps to look into how the Trustee was handling the trust assets, but that inquiry apparently was related to the ownership of the various partnerships by the trust and the Trustee and to explain certain financial statements to the trust and the partnerships. The beneficiaries were under no duty to double-check Accountant's professional work for the trusts. *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997). Under the circumstances, it was not against the weight of the evidence for the trial court to hold that the beneficiaries did not know and did not have reason to know prior to 1990 that the Accountant's performance amounted to malpractice.

## Conclusion

For all of the above reasons, the judgment of the trial court is affirmed.

All concur.