AMERICAN CANCER SOCIETY, ST. LOUIS DIVISION, et al., Plaintiffs-Respondents,

v.

Robert W. HAMMERSTEIN, Jr., etc., Defendant-Respondent-Appellant,

v.

EST. OF John G. KNOLL, Jr., Dec'd., Defendant-Appellant.

No. 42930, 42920.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 22, 1981.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 19, 1982.

Application to Transfer Denied April 13, 1982.

Malcom, Carolyn Malcom Biehle, Eileen Kohler Gerard and Paul David Laubengayer.

William S. Preiss, Clayton, for Rock Presbyterian Church.

Donald V. Fraser, St. Louis, for Immanuel Lutheran Church, Olive Kraus Eichorn, Erna Kraus Martin, Alta Kraus Schmidt, Norville Kraus, Armin F. Kraus, Carl Kraus, Kay Marie Kraus, Al Jay Kraus, Jane Kraus Schuttenhelm, Ellerd W. Dierks, Charlotte Dierks Davis, Minerva Dierks Ainsley, Gloria Dierks Prindiville, and Emma Kraus Stiegemeyer.

Jeremiah Nixon, Thurman, Nixon, Smith, Howald, Weber & Bowles, Hillsboro, for St. Paul's Lutheran Church, Ada Kohler Huckie, D. J. Huckie, James W. Kohler, Cheryl Gay Kohler, Karen Kay Kohler, Henry Blunk, and Dorothy Stephan Williams.

William G. Guerri, Thompson & Mitchell, St. Louis, for Heart Ass'n of St. Louis.

Donald H. Clooney, St. Louis, for Clara Kraus Zamzow, Ellis R. Schmidt, Elaine Schmidt Voelkel, Ellis R. Schmidt, Arthur H. Huckie, Ronald Hemme and Dennis Hemme.

R. A. Wegmann, Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, P. C., Hillsboro, for Irma Kohler Glatt, Grant Walter Kohler Glatt, Grace Glatt Powell, Carol Ann Whaley, Gail Ida Whaley, Dixie Kay Whaley, June Eleanora Whaley, and Gary Olen Whaley.

Charles E. Roth (Guardian ad Litem) (court-appointed), Clayton, for all of the aforesaid unborn and unknown respondents.

Joseph A. Murphy, St. Louis, for respondents-appellants.

Donald S. Hilleary, Clayton, for American Cancer Society.

David G. Lupo, St. Louis, for Robert W. Hammerstein, Jr., etc., respondents-appellants.

Gregory D. O'Shea, St. Louis, for St. Luke's Evangelical Church, Shirley Kohler

GUNN, Judge.

Appellants—the trustee of a testamentary trust and the estate of the life beneficiary of the trust—appeal from the trial court's ruling that an attempted trust termination was void. Respondent, American Cancer Society, is one of several remaindermen named in the trust to benefit from its assets in the event the trust was in existence after the death of the life beneficiary.

The epicenter of these proceedings around which other issues revolve is a particular trust termination provision and the trial court's application of an alleged improper standard for overruling the trustee's attempted termination of the trust. Specifically, the testatrix-settlor provided authority for the trustee to terminate the trust during the lifetime of her daughter or son-in-law when either would be the sole beneficiary. The question arises as to what standard applies in determining whether or not the trustee has properly terminated the trust. Under the circumstances of this case the proper gauge is whether the trustee has abused his discretion. We find that the evidence will not support a finding of abuse. Hence, our holding is that the trust was validly terminated by the trustee's action, and we reverse and remand.

Various issues which are raised, including whether the trustee should have first sought a declaratory determination of the propriety of his proposed action, will be discussed as appropriate in reaching the denouement.

Well over a decade ago, in October, 1970, this jaded bit of litigation began its struggle to stumble through the labyrinth of the judicial processes. It was then that defendant-appellant Robert Hammerstein, Jr., as trustee of the testamentary trust of Lena Kohler, mailed written notice to all contingent remaindermen of his intention to terminate the trust and distribute its assets as of January 15, 1971 to the surviving life beneficiary, John G. Knoll, Jr. The trustee relied on the following trust provision as his authority to terminate:

(i) This Trust may be terminated during the life of my daughter, Virginia W. Knoll, or during the life of my son-in-law, John G. Knoll, Jr., during such period when either of them may be the sole beneficiary, *if there should be such a course of events or circumstances, that my Trustees should deem it best to terminate the same*, but such action on the part of the Trustees shall not make them

liable to the remaining beneficiaries in any way or manner and such distribution shall then be made either to my daughter, Virginia W. Knoll, if living, otherwise to my son-in-law, John G. Knoll, Jr., if living. (emphasis added)

In November, 1970 respondent American Cancer Society, one of the contingent remaindermen, brought suit in St. Louis County to thwart termination of the trust, joining all other contingent remaindermen with the trustee as defendants. In December, 1970, certain other contingent beneficiaries filed a similar suit in Jefferson County. The Missouri Supreme Court found that venue was properly in St. Louis County and issued a peremptory writ of prohibition preventing the Jefferson County circuit court from proceeding further with the case. *State ex rel. Hammerstein v. Hess*, 472 S.W.2d 362 (Mo. banc 1971). In June, 1972, American Cancer Society and the trustee entered into a settlement agreement as to the termination and distribution of the trust, but this court prevented the trial court from enforcing its decree, which ordered specific performance of the settlement, on the ground that it was not consented to by all the beneficiaries. *State ex rel. Eichorn v. Luten*, 515 S.W.2d 857 (Mo. App.1974). In the midst of this litigation, on February 5, 1973, John G. Knoll, Jr., the life beneficiary, died.

Following various other complex legal maneuvers, this court issued a writ of mandamus compelling the trial court to set aside an order reinstating a default judgment against certain contingent beneficiaries. *State ex rel. Eichorn v. Luten*, 561 S.W.2d 435 (Mo.App.1978). Trial on the merits of the suit finally took place from August 27, 1979 to September 17, 1979, with all contingent beneficiaries represented by counsel.

Further pertinent facts are as follows. Defendant trustee's father, Robert Hammerstein, Sr., was testatrix-settlor Lena Kohler's attorney and drafted her will, in which she provided for the now coveted

trust. The testatrix-settlor named her daughter, Virginia W. Kohler Knoll, and Mr. Hammerstein, Sr., as co-trustees and directed that Robert Hammerstein, Jr., defendant herein, be appointed successor trustee upon the loss of the services of an original trustee. The testatrix-settlor designated Virginia Knoll as the life beneficiary of the trust income, and, upon her death, John Knoll was to receive the income until his death or remarriage. The testatrix-settlor authorized the trustees "to encroach upon the principal of the trust for the proper maintenance and support of my said daughter, Virginia W. Knoll, and my said son-in-law, John G. Knoll, Jr." while they were entitled to receive the trust income, if the trustees deemed encroachment to be necessary or to provide against emergencies affecting the life beneficiaries "occasioned by sickness, accident, ill health, affliction, misfortune or otherwise."[1] Upon the death of the surviving life beneficiary, if the trust had not been earlier terminated by John Knoll's remarriage after Virginia Knoll's death or by the trustee's exercise of his discretionary power to terminate, the trust was to end and the corpus distributed to certain named remainder beneficiaries, including four churches, two charities, and forty-two individuals or their descendants.

John Knoll's receipt of the trust income and defendant trustee Hammerstein, Jr.'s duties as sole trustee commenced upon the death of Virginia Knoll on May 27, 1966.[2] Hammerstein, Jr. was John Knoll's "business friend" and lawyer, performing such services as drafting Knoll's will and preparing his tax returns. When John Knoll died, his brother, William Knoll, and Hammerstein, Jr. served as co-executors of the estate. Hammerstein, Jr. was also counsel for the estate until he withdrew from both positions in March, 1973. John Knoll also appointed William Knoll and Hammerstein, Jr. as co-trustees of a testamentary trust established for John Knoll's niece and funded with one-half the residue of his estate.

In October, 1970, trustee Hammerstein, Jr. was serving as counsel and as a director and officer of Kohler City Supply Company, a closely held corporation, one-third of whose outstanding shares of stock were owned by the trust. Kohler City Supply Company was thus a substantial factor in the trust. John Knoll and four long-time employees of the company owned the remaining shares, with Knoll also being a director and officer.[3]

As mentioned, it was by letter dated October 15, 1970, that Hammerstein, Jr. as trustee of the Lena Kohler trust sent notice to remainder beneficiaries announcing his intention to terminate and distribute the trust. In his testimony at trial, the trustee gave as his reason for termination a desire to prevent chaos in the company, which could result if the shares held by the trust were divided among the many remainder-

1. The trustee did encroach upon the principal for the benefit of John Knoll in November, 1968 and March, 1969 to pay federal estate tax deficiencies assessed against the estate of Virginia Knoll totalling $39,328.10. The deficiency arose when the Internal Revenue Service included the assets of the Lena Kohler trust in Virginia Knoll's estate on the ground that Virginia held a general power of appointment, since she, as co-trustee, could at any time during the period that she was sole income beneficiary terminate the trust and consume the principal. John Knoll agreed to reimburse the trustee if this encroachment was subsequently held to be improper. To ensure enforcement of the indemnification agreement after John Knoll's death, the trustee filed a contingent claim against the estate of John Knoll.

2. Defendant Hammerstein, Jr. had been serving as co-trustee with Virginia Knoll since the death of his father, Robert Hammerstein, Sr., in 1963.

3. In 1967, the shareholders of Kohler City Supply Company entered a stock purchase agreement, providing that a shareholder desiring to dispose of his or her stock must give the company the first option to purchase and the other stockholders the next purchase option. The agreement was to be binding on the heirs and successors of the signatory parties. Their goal was "to provide for the continuity in management and control" of the company.

men.[4] Evidence indicated that John Knoll was contemplating remarriage at the time the trustee announced his decision to terminate, but the strength of Knoll's commitment to this endeavor and the extent of its notoriety were uncertain. John Knoll was unmarried when he died.

The trial court found, *inter alia* : (1) the attempted termination was void, in that the trustee "unintentionally, in error and through mistake" abused his termination discretion; (2) that the trustee's conduct after announcement of termination was inconsistent with such purpose; (3) that the trustee should have sought declaratory judgment concerning the extent of his discretionary powers; (4) that the trustee should be removed, surcharged for a portion of fees and litigation expense, and make an accounting to the trust remaindermen during the trial of the case on its merits.

Appellants first allege that the trial court erred in concluding that any attempt by the trustee to terminate the trust before the death of the life beneficiary (John Knoll, Jr.) was void because the trustee "unintentionally, in error and through mistake misused, and in legal effect abused, any termination discretion conferred upon him by the Trust instrument." In support of its conclusion the trial court found that: (1) the events or circumstances motivating the trustee to end the trust (chaos at Kohler City Supply Company) were not within the contemplation of the settlor (Lena Kohler) when she granted the trustee termination power; (2) the reasons for termination lacked merit because distribution of the stock to the remainder beneficiaries would not cause chaos at the company; (3) the trustee's decision to terminate was inconsistent with his fiduciary duty and with the settlor's intent, since it would favor one beneficiary to the detriment of all others; (4) the trustee was disenfranchised from exercising his termination discretion, because he could expect to benefit personally from so doing which would result in a conflict with his fiduciary duty to all trust beneficiaries; and (5) termination in favor of the life beneficiary (John Knoll) was directly contrary to the settlor's express provision for termination in favor of the remainder beneficiaries upon John Knoll's remarriage.

Our guidepost for review requires a determination of whether the trial court's judgment is against the weight of the evidence, unsupported by substantial evidence, and erroneously applies or declares the law.

4. Specifically, the October 15, 1970 notice of termination gave as reason for such action:

 If the Lena M. Kohler Trust terminated because of the death of John G. Knoll, Jr., the corpus of the trust would pass to 41 individuals and 6 charitable organizations. The end result, as far as the Kohler City Supply Company is concerned would be possible chaos. Instead of having control and management in a small group, there would not be any effective control among any of the shareholders, and keeping present management or hiring of new management would be difficult, if not impossible.

 Kohler City Supply Company is a relatively small company and the prospect of having a large number of shareholders, none of whom would be able to provide the on-the-premise management, could result in the curtailment of the effective operation of the corporation.

 For the above reasons, among others, I have come to the conclusion that it would be best to terminate the Lena M. Kohler Trust and make distribution of the trust assets to the present beneficiary, John G. Knoll, Jr.

 This would result in a continuing effective control and management of Kohler City Supply Company, and Mr. Knoll would then be in a position to make provisions for the continuing operation of the corporation after his death or incapacity. This would also solve the unusual real estate title problems which could arise in the event of the death of Mr. Knoll. By the terms of the enclosed will, I receive a commission from the trust as Trustee. This, of course, would be discontinued after the trust is terminated.

 By virtue of the authority vested in me under Article Fourth (i) of the last will and testament of Lena M. Kohler, Deceased, and believing the above stated reasons, among others, to be such a course of events and circumstances to justify my actions, permit this to serve as notice that on January 15, 1971, I will terminate the Lena M. Kohler Trust and make distribution of the principal trust assets to John G. Knoll, Jr.

*Owens v. Vesely,* 620 S.W.2d 430, 433 (Mo. App.1981). Under the circumstances, we conclude that the judgment should be reversed.

■■■ As this case requires interpretation of a will, the court must ascertain and give effect to the intent of the testatrix as revealed in the will as a whole. *In re Estate of Just,* 618 S.W.2d 208, 211 (Mo. App.1981); *In re Estate of Welter,* 598 S.W.2d 618, 619 (Mo.App.1980); § 474.430, RSMo 1978. When a testator vests sole discretion in a matter in the trustee and supplies no objective standards by which to evaluate the reasonableness of his conduct, a court must not interfere unless the trustee, in exercising his power, wilfully abuses his discretion or acts arbitrarily, fraudulently, dishonestly or with an improper motive. *First National Bank of Kansas City v. Hyde,* 363 S.W.2d 647, 655 (Mo.1962); *Bakewell v. Mercantile Trust Co.,* 319 S.W.2d 600, 606 (Mo. banc 1958); *Gould v. Starr,* 558 S.W.2d 755, 765 (Mo.App.1977), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2236, 56 L.Ed.2d 403 (1978); 3 A. Scott, The Law of Trusts § 187 (3d ed. 1967); Restatement (Second) of Trusts § 187 (1959). This bit of legal rubric also applies in the situation in which the trustee has been granted the panoply of discretionary power to terminate the trust. *Estate of McManus,* 62 A.D.2d 758, 407 N.Y.S.2d 180, 184 (1978), *aff'd,* 47 N.Y.2d 717, 390 N.E.2d 773, 417 N.Y.S.2d 55 (1979); G. Bogert, The Law of Trusts and Trustees § 1000 (2d ed. 1962); 4 A. Scott, The Law of Trusts § 334.1 (3d ed. 1967); Restatement (Second) of Trusts § 334, Comment d (1959).

The testatrix (Lena Kohler) clearly expressed her intent to give the trustee absolute discretion to terminate the trust and distribute its assets to the life beneficiary by authorizing the trustee to terminate "if there should be such a course of events or circumstances, that my Trustees should deem it best" to do so. An improper standard was therefore applied in overriding the trustee's decision to terminate on the

ground that the trustee "unintentionally, erroneously and mistakenly" abused his discretion. The trustee's decision must stand absent evidence of wilful abuse of discretion or bad faith on his part.

■■■ There is no evidence and it is not alleged that the trustee acted arbitrarily, dishonestly or fraudulently, or intentionally abused his discretion. Indeed, the trial court stressed that its judgment was not a reproval nor "to be construed as involving personal censure of the Defendant Trustee." The trial court perhaps implied that the trustee's proposed actions were improperly motivated when it concluded that the trustee was "disenfranchised" from exercising his termination power because he personally could benefit thereby. It is, of course, a maxim of the law of trusts that a trustee must act solely in the interest of the beneficiary and refrain from self-dealing or duplicity. *Hillyard v. Leonard,* 391 S.W.2d 211, 223–24 (Mo.1965); *Whan v. Whan,* 542 S.W.2d 7, 12 (Mo.App.1976). And, in determining whether a trustee has acted from improper motivation, consideration is given as to whether the trustee had an interest conflicting with that of a beneficiary. 3 A. Scott, The Law of Trusts § 187.5 (3d ed. 1967); Restatement (Second) of Trusts § 187, Comment g (1959).

■■■ There was no improper motivation on the part of the trustee in this indirect enrichment, stemming from the enhancement of the wealth of his business friend and client, John Knoll, and the latter's increased estate. On the other hand, the trustee conceivably could have reaped greater gains by continuing the trust, thereby assuring continuance of trustee fees. The law does not require a trustee to be totally disinterested and does not mandate his automatic removal if he acts with resultant advantage to himself. *Title Guaranty Trust Co. v. Sessinghaus,* 325 Mo. 420, 28 S.W.2d 1001, 1005 (1930); *Webb v. St. Louis County National Bank,* 551 S.W.2d 869, 883 (Mo.App.1977). The remote and

speculative prospect of self-benefit to the trustee upon termination of the trust does not maculate his conduct with improper motivation or preclude him from taking such actions.[5] In the absence of evidence of the trustee's improper motivation or other bad faith, no basis existed for evaluating and rejecting the trustee's reasons for terminating the trust.

■ Certainly, a grant of absolute discretion to a trustee is not a roving commission—the trustee must be guided by the interest of the beneficiary and must further trust purposes in the exercise of his power. *Cozart v. Green Trails Management Corp.*, 501 S.W.2d 184, 187 (Mo.App.1973); Restatement (Second) of Trusts § 170, Comment q (1959). But the evidence supports the conclusion that the trustee acted in the interest of the life beneficiary, even though he had an announced concern for Kohler City Supply Company, which incidentally was not inimical to that interest. He adhered to the purpose and intent of the settlor as expressed in her explicit authorization for the trustee to terminate the trust and distribute it to the life beneficiary. The settlor revealed her intent to favor the life beneficiary over remainder beneficiaries in other trust provisions—relieving the trustee of any liability to the remainder beneficiaries if he chose to terminate in favor of the life beneficiary[6] and authorizing the trustee to encroach upon the principal for the benefit of the life beneficiary under particular circumstances. Concern that the trustee's decision to terminate the trust would favor one beneficiary to the detriment of all others is not a viable consideration. It is the prerogative of the

testator to favor certain beneficiaries over others. A beneficiary takes only by benevolence of the testator, who may attach lawful conditions to the receipt of the gift. *Gibson v. Gibson*, 280 Mo. 519, 219 S.W. 561, 565 (1920); Restatement (Second) of Trusts §§ 128, 183, Comment a (1959). The testator is presumed to know and intend the legal effect of the language in his will. *In re Estate of Welter*, 598 S.W.2d at 619; *In re Estate of Stengel*, 557 S.W.2d 255, 259 (Mo.App.1977); *Magruder v. Magruder*, 525 S.W.2d 400, 405 (Mo.App.1975). And in this instance, the trustee's decision to terminate was consistent with the clearly expressed intent of the testatrix.

Appellants Hammerstein, Jr. and estate of John Knoll have asserted trial court error in the conclusion that the trustee acted inconsistently with his elected termination of the trust, in that he failed to distribute its assets and filed a claim against the estate of John Knoll to reimburse the trust, if necessary, for the encroachment made to pay estate taxes assessed against the estate of Virginia Knoll. Appellants allege that the trust terminated on October 15, 1970 when the trustee sent notice to all remainder beneficiaries of his decision to terminate. The trial court concluded that the trust ended on February 5, 1973, the date of death of the life beneficiary, John Knoll.

■ When the time for termination of a trust arrives, the trustee continues in that capacity throughout the period of the winding up and distribution of the trust property. While concluding the trust, the trustee is charged with exercising care and skill to preserve the trust property until distribution. *Leith v. Mercantile Trust Co.*, 423

---

**5.** We note that it is not inherently improper for a person to serve a settlor in other capacities as well as trustee, such as draftsman of his will, legal counsel, and executor of his estate. The trustee must surrender a position only if it become antagonistic to one of his other functions. *Wiegand v. Woerner*, 155 Mo.App. 227, 134 S.W. 596, 607 (1911). Here, Hammerstein properly withdrew as executor and attorney for John Knoll's estate because of the potential conflict with his role as trustee.

**6.** An exculpatory clause is valid and not contrary to public policy and is enforceable absent a showing that the settlor was improperly induced to insert it. *Jarvis v. Boatmen's National Bank of St. Louis*, 478 S.W.2d 266, 274 (Mo. 1972); Restatement (Second) of Trusts § 222(2) (1959).

S.W.2d 75, 85 (Mo.App.1967); G. Bogert, The Law of Trusts and Trustees § 1010 (2d ed. 1962), Restatement (Second) of Trusts § 344, Comment c (1959). The length of time required to complete this process depends on the circumstances. It may be lengthened, for example, by litigation. 4 A. Scott, The Law of Trusts § 345.1 (3d ed. 1967).

 The trustee in this case properly postponed distribution of the trust assets to the life beneficiary when American Cancer Society intervened by filing suit. The litigation has remained pending and has precluded distribution for more than eleven years. The trustee was also merely acting in accordance with his fiduciary duty to preserve the trust by filing the claim against the estate of John Knoll for reimbursement of the trust encroachments for payment of Virginia Knoll's estate taxes in the event that they were found to be improper. (The trial court, incidentally, concluded that the encroachments were within the encroachment powers of the trustee.) The trustee's conduct was not inconsistent with termination of the trust. While ordinarily a trust is deemed terminated after the trustee has finally distributed its assets to the proper beneficiaries [4 A. Scott, The Law of Trusts § 344 (3d ed. 1967)], we find that this trust terminated on October 15, 1970 when the trustee announced his intent to terminate and distribute the trust to the life beneficiary. We cannot conclude that the trust ended with John Knoll's death, for the trust would have been distributed to the life beneficiary prior to his death. That intendment was foiled by this suit filed by the remaindermen.

Appellants contend also that the trial court erred in concluding that the trustee initially should have sought a declaratory judgment as to the propriety of his proposed termination, thereby alleviating much of the expense of this prolonged litigation.

 The trial court's observation is correct that the trustee *could* have sought a judicial construction of the will and declaration of rights with respect to the trust. §§ 527.020, .040, RSMo 1978; Rule 87.02(b). Further, a court of equity has general supervisory power over trusts and may advise trustees as to the extent of their discretionary powers, refraining, however, from dictating how the trustees must exercise their discretion. *McEntee v. Halloran*, 391 S.W.2d 266, 268 (Mo.1965); *Bolles v. Boatmen's National Bank of St. Louis*, 363 Mo. 949, 255 S.W.2d 725, 732 (1953); *The First National Bank of Kansas City v. Christopher*, 624 S.W.2d 474 (Mo.App.1981). Certainly, the trustee had the option to seek judicial advice prior to proclaiming his termination of the trust as to whether the contemplated action resided within his discretionary powers and what would be the consequences. But it was not mandatory for him to do so. Imposition of a duty on trustees to seek judicial advice prior to any exercise of their discretion would place an inordinate burden on trusts and on the judicial system. The courts are not under obligation nor permitted to serve as legal advisors to a trustee in this situation. *McEntee v. Halloran*, 391 S.W.2d at 268; *The First National Bank of Kansas City v. Christopher*, 624 S.W.2d 474 (Mo.App.1981).

 The trustee was properly acting within his discretionary powers in terminating the trust in favor of the life beneficiary. Thus, no basis exists for removing him as trustee and surcharging him for a portion of the litigation fees and expenses as some sort of expiation. Rather, his successful defense of this suit entitles him to an award from the trust assets of reasonable attorney's fees and expenses. *Jarvis v. Boatmen's National Bank of St. Louis*, 478 S.W.2d at 277. Furthermore, it is unnecessary for the trustee to make an accounting to the contingent beneficiaries as ordered by the trial court or for us to consider the estate of John Knoll's contention that the earlier settlement agreement is binding on the signatory parties.

Judgment is reversed and remanded for further proceedings consistent with this opinion.

DOWD, P. J., and SIMON, J., concur.