SHERRI B. SULLIVAN, J.
*734 Introduction
Michael Bentz (Bentz) appeals from the trial court's December 20, 2016 Amended Order and Judgment (Amended Judgment or Amended Judgment by Interlineation) amending by interlineation its July 29, 2016 Findings of Fact, Conclusions of Law, Order and Judgment (Judgment or Initial Judgment) entered on Harry Keeven's one-count petition for Removal of Trustees, for the Appointment of a Special Fiduciary, Avoidance of Conflict of Interest Transactions, for an Accounting and for Other Relief; the Second Amended Third-Party Petition of Matthew Keeven against Bentz in three counts for Court-Supervised Administration, to Compel Distribution, or in the Alternative, to Remove Trustee; the Counterclaim of Third-Party Defendant Bentz to Matthew Keeven's First Amended Third-Party Petition in five counts filed; and the Motion of Harry Keeven for Sanctions Against Matthew Keeven for his failure to cooperate in discovery in this action. Matthew Keeven cross-appeals from the Amended Judgment and the court's denial of his Post-Trial Motions to Amend Judgment or for New Trial and/or his Motion to Amend the July 29, 2016 Judgment As Modified by the Trial Court's Amended Order and Judgment of December 20, 2016. We affirm.
Factual and Procedural Background
Joseph H. Keeven, who had seven children, died on August 18, 2010. His children are Joseph L. Keeven, Matthew J. Keeven, Harry Keeven, William J. Keeven, Katherine M. Siesener, Mary M. Baldetti, and Patricia M. Fink. On December 13, 2006, Joseph H. Keeven created the Joseph H. Keeven Revocable Trust (the Trust), of which he was the Grantor and Trustee. The Trust named the seven children as beneficiaries, each to take an equal one-seventh of the remaining assets of the trust after the termination of the Trust upon Joseph H. Keeven's death, once all taxes, debts, and expenses incurred by the Trust and for Joseph H. Keeven's funeral were paid. Matthew J. Keeven and Patricia M. Fink were named as successor co-trustees of the Trust after Joseph H. Keeven's death.
On April 17, 2007, Joseph H. Keeven executed an Agreement of Limited Partnership known as the J & M Keeven Family, L.P. (the Family Limited Partnership or FLP). The Agreement establishing the FLP was executed between Joseph H. Keeven as an individual and Joseph H. Keeven as Trustee of the Trust. The FLP Agreement provides that Joseph H. Keeven, as Trustee of the Trust, was the sole managing partner, sole general partner, and limited partner of the FLP. Joseph H. Keeven's seven children are limited partners of the FLP.
The Trust and the FLP own certain real estate in St. Louis and Pike Counties. One of the parcels of real estate in St. Louis County in which the Trust owns an interest is known as the Bryan Island Stables and is used as a commercial horse boarding business. All of the other real property owned by the Trust and the FLP is used for agricultural purposes, which includes the production of hay, sod, and row crops, including soybeans. The various parcels of *735 real estate owned by the Trust and used for agricultural purposes are commonly known and referred to as the "Island," the "RSK property," the "FLP ground," and the "181 acre Pike County property." The Trust owns only a one-third interest in the Island and the RSK property. Several of the Keeven children have pursued income-producing activities in, on, or about the Trust, FLP, and the properties owned by those entities, particularly Matthew, Harry, Patricia, and William, both prior to and after their father's death.
In 2010, a probate estate was opened in the St. Louis County circuit court. Matthew Keeven and Patricia Fink, during their tenure as successor co-trustees, have not distributed any of the Trust property or income to the beneficiaries despite the fact the Trust terminated on August 18, 2010. While serving as co-trustee of the Trust, Matthew Keeven conducted farming activities on the Trust and FLP properties for his personal benefit. On May 13, 2013, Harry Keeven filed a petition for Removal of Trustees, for the Appointment of a Special Fiduciary, Avoidance of Conflict of Interest Transactions, for an Accounting and for Other Relief. On July 22, 2014, Patricia and Matthew resigned as trustees and the court appointed Bentz as successor Trustee of the Trust and successor personal representative of the Estate of Joseph H. Keeven, with the consent of all the beneficiaries.
On December 18, 2014, Matthew Keeven filed a Third-Party Petition for Court Supervised Administration and to Compel Distribution, or, in the alternate, to Remove Trustee, alleging Bentz was not performing his duties properly and should be removed. Matthew Keeven filed a First Amended Third-Party Petition, and later a Second Amended Third-Party Petition. Trial was held on June 30, 2015 through July 2, 2015; October 13, 2015 through October 14, 2015; and January 25, 2016 through January 28, 2016. On July 29, 2016, the trial court entered its Judgment against Matthew Keeven in favor of Bentz, in his capacity as Personal Representative in the amount of $15,341.70 and also awarded Harry Keeven's attorney's fees in the amount of $109,265.42, to be paid from the Trust. The Judgment granted Harry Keeven's Motion for Sanctions and awarded him attorney's fees in the amount of $25,000, to be paid by Matthew Keeven personally. The Judgment declined to remove Bentz.
Bentz filed a Motion to Reconsider and Matthew Keeven filed a Post-Trial Motion to Amend Judgment or for New Trial. The trial court issued an Order and Judgment of Amendment of Paragraph 1 of the Initial Judgment and denied Matthew Keeven's Motion. On December 20, 2016, the trial court issued its Amended Judgment by Interlineation. In the Amended Judgment by Interlineation, the trial court concluded because the Trust terminated upon the death of Joseph H. Keeven on August 18, 2010, the FLP dissolved on that date, because the Trust(ee), as sole General Partner of the FLP, withdrew on that date. Specifically, the trial court stated:
Trustee of the Trust serving as general partner was also the grantor [settlor] of the Trust. ARTICLE IV of the Trust provides, in pertinent part, that "[a]fter the death of the grantor, all of the assets in the trust estate which are not required for the payments which the trustee makes pursuant to ARTICLE III hereof shall be distributed in seven (7) equal shares to [JOSEPH'S SEVEN NAMED CHILDREN], per stirpes ..." Joseph's death on August 18, 2010, triggered termination of the trust.
The court also stated:
Therefore, Joseph's death, which triggered a termination of the Trust, also constituted an event of withdrawal of the *736 Trust as general partner of the FLP under section 359.241, RSMo, which, in turn, triggered a dissolution of the limited partnership.
Harry Keeven, Mary Baldetti, Patricia Fink, and Bentz filed a joint Motion to Amend or Modify the Amended Judgment. Matthew Keeven file a Motion to Amend the July 29, 2016 Judgment and the Amended Order and Judgment of December 20, 2016. Harry Keeven filed his response to the Motion filed by Matthew Keeven. Matthew Keeven filed his response to the Motion filed by Harry Keeven. On April 3, 2017, the trial court denied the motions filed by Matthew Keeven and the joint motion. This appeal and cross-appeal follow.
Points on Appeal
Bentz presents two points on appeal. In his first point, he alleges the trial court erred in amending the Judgment on December 20, 2016, wherein it ruled the Trust and FLP terminated upon Joseph H. Keeven's death because the trial court failed to comply with the provisions of Rule 75.01[1] by failing to give the parties reasonable notice and an opportunity to be heard prior to entering said ruling.
In his second point, Bentz contends the trial court erred in ruling both the Trust and FLP terminated upon Joseph H. Keeven's death because unless there is a specific termination date in the Trust, it does not terminate until the trustee gives a final accounting and conveys trust property to the beneficiaries. Bentz maintains because the Trust has not yet terminated, an act of withdrawal has not yet occurred by the family limited partnership's general partner under Section 359.451.[2]
Points on Cross-Appeal
Matthew Keeven presents three points on appeal. In his first point, he claims the trial court erred in granting damages related to the FLP properties because Harry Keeven's petition sought relief sounding in breach of trust only and did not seek relief on the basis that Matthew Keeven owed and/or breached any fiduciary duties arising in partnership law to the FLP properties.
In his second point, Matthew Keeven asserts the trial court erred in failing to separately enter the damages adjudged against him to specify what portion of damages were attributable to activities on Trust properties and what portion were attributed to activities on FLP properties.
In his third point, Matthew Keeven suggests the trial court erred in denying his post-trial motion to amend the Judgment finding him liable for breaching his fiduciary duty to the Trust by withholding from it profits he derived from FLP property in light of its determination in the Amended Judgment that the Trust withdrew from the FLP and the FLP terminated upon Joseph H. Keeven's death.
Standard of Review
The judgment from a court-tried probate case will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Alexander v. UMB Bank, NA, 497 S.W.3d 323, 326 (Mo. App. W.D. 2016). We review questions of law including the determination of the meaning of a trust instrument de novo , giving no deference to the trial court's judgment in such matters. Id.
*737 Discussion
Bentz Appeal
Point I
In his first point, Bentz alleges the trial court erred in amending the judgment on December 20, 2016, wherein it ruled the Trust and FLP terminated upon Joseph H. Keeven's death because the trial court failed to comply with the provisions of Rule 75.01 by failing to give the parties reasonable notice and an opportunity to be heard prior to entering said ruling.
After the expiration of the 30 days provided by Rule 75.01, the trial court is divested of jurisdiction, unless a party timely files an authorized after-trial motion. Sherman v. Kaplan, 522 S.W.3d 318, 325 (Mo. App. W.D. 2017). If a party timely files an authorized after-trial motion, the judgment becomes final at the earlier of the following: (A) ninety days from the date the last timely motion was filed, on which date all motions not ruled shall be deemed overruled; or (B) if all motions have been ruled, then the date of ruling of the last motion to be ruled or thirty days after entry of judgment, whichever is later. Rule 81.05(a)(2); Ferguson v. Curators of Lincoln University, 498 S.W.3d 481, 494-95 (Mo. App. W.D. 2016).
In this case, the last after-trial motion was denied on April 3, 2017, as Bentz concedes in his brief. The trial court entered its initial judgment on July 29, 2016. In this Judgment, the court directed that all agricultural activities on FLP and Trust property shall cease pending sale of those properties unless Bentz shall establish by competent and substantial evidence that continuing agricultural activities is reasonably necessary to preserve the Trust property. On August 11, 2016, Bentz filed a post-trial motion for Reconsideration, or in the Alternative, to Correct, Amend or Modify Judgment. On August 29, 2016, Matthew Keeven filed a post-trial motion to Amend Judgment or for New Trial. A plethora of other post-trial motions were filed by various parties regarding clarification, for court instruction on how to administer various aspects of the Trust, for attorney's fees, as well as responses to post-trial motions. The trial court ordered hearings, ruled on motions, and administered orders accordingly.
On October 17, 2016, the court issued an Order Addressing the Bentz Memorandum Dated August 11, 2016 and supplemented on September 13, 2016. In it, the court addressed questions presented to the court by Bentz as to whether he should, as appointed trustee, allow certain parties to continue leasing and/or purchasing various properties owned by the Trust and/or FLP for residential and/or storage purposes, all of which the trial court addressed, allowing some and denying others. The court noted it had ordered Bentz and William Keeven in its Order dated August 22, 2016, to report to the court on September 23, 2016, about the status of their negotiation for leasing and operating the Bryan Island Stables. The court considered the testimony of Bentz regarding same and found that he failed to establish by competent and substantial evidence that continuing the operation of Bryan Island Stables is reasonably necessary to preserve the stables. The court directed Bentz to move forward with the winding up of stable operations and to close the stables with all deliberate speed.
In the October 17, 2016 Order, the court also noted Bentz requested permission to continue leasing eight acres of FLP property to Harry Keeven at $800 per month for agricultural purposes, and for permission to pursue leasing of other FLP property to a Mr. Danny Koester for the purpose of planting crops. The court addressed these questions, and denied the former request because the evidence *738 showed Harry Keeven had not been paying the $800 per month and it was not demonstrated Harry Keeven's activities on the subject property were reasonably necessary to preserve the Trust property. The court allowed the lease to Mr. Koester for the planting of crops in 2017 subject to the winding up of the Trust in 2017.
The court reiterated its July judgment finding that by its terms, the Joseph H. Keeven Trust has terminated and Bentz is charged with winding up administration of the Trust. In its October Order, the court again directed Bentz to wind up administration with all deliberate speed. To that end, the court directed Bentz to file, on or before November 14, 2016, a written proposal outlining his plan for winding up administration of the Trust and a proposed calendar of benchmark dates for those tasks necessary to finish administration of the Trust.
On November 7, 2016, Bentz filed a Motion to Address Issues Not Addressed in The Order of October 17, 2016, namely past due rent owed by Harry Keeven and Bentz's request for attorney's fees. The court then addressed these issues.
On December 20, 2016, the court issued the Amended Order and Judgment, amending by interlineation paragraph 10 of its initial order and judgment, which originally had read, "10. The Trust is the Managing Partner, General Partner and a Limited Partner of the FLP." The court noted, "During the course of post-trial proceedings, the court has been called upon to revisit the authority of the Trustee of the Trust to permit continuing commercial and agricultural activities on Trust and/or FLP property." The court continued, "In connection with discussion and deliberation on these continuing activities, the court requested and was provided with a copy of the Agreement of Limited Partnership of the FLP." The court found that, contrary to what it had written in paragraph 10, the partnership agreement provided that Joseph H. Keeven, in his capacity as trustee of the Trust, served as the sole general partner of the FLP, until his death on August 18, 2010. Missouri partnership law provides that the withdrawal of a general partner occurs "[i]n the case of a general partner who is acting as a general partner by virtue of being a trustee of a trust, the termination of the trust (but not merely the substitution of a new trustee)." Section 359.241(7). Here, as the court found the Trust terminated by its terms upon Joseph H. Keeven's death, except for winding up the Trust, Joseph's death causing the termination of the Trust precipitated the Trust's withdrawal as the sole general partner of the FLP, hence resulting in the dissolution of the FLP, except for winding-up purposes. Accordingly, the trial court amended the July judgment by interlineation of paragraph 10, which now reads, "10. The FLP dissolved on August 18, [2010] upon the death of Joseph H. Keeven and the termination of the Joseph H. Keeven Trust."
Bentz contests this amendment by interlineation, arguing the court did not have jurisdiction to make such an amendment and the parties were not given notice or an opportunity to be heard on this matter. First, the court had jurisdiction over this case at the time it made the amendment, as the myriad of post-judgment motions, hearings on said motions, amendments and orders pursuant to said motions, and further post-amended judgment motions maintained the court's continuing jurisdiction over this case well into and beyond December 20, 2016.
Second, the parties had sufficient notice this issue was to be taken up by the court as it was presented to the court by the parties. The court itself noted that "[d]uring the course of post-trial proceedings, *739 the court has been called upon to revisit the authority of the Trustee of the Trust to permit continuing commercial and agricultural activities on Trust and/or FLP property.... In connection with discussion and deliberation on these continuing activities , the court requested and was provided with a copy of the Agreement of Limited Partnership of the FLP. " (Emphasis added.) This pronouncement belies Bentz's contention the parties had no notice this issue was to be taken up and resolved by the court. Further, the partnership agreement was part of the record before the court from the beginning and had been attached as Exhibit 2 to Matthew Keeven's First Amended Third-Party Petition against Bentz filed February 17, 2015, to which Bentz had filed a counterclaim February 27, 2015. Bentz was well aware of the partnership agreement and regularly conducted business involving its properties in winding up the administration of the Trust.
Third, Bentz had adequate opportunity to be "formally" heard on this matter as well because he briefed the court on it in his January 17, 2017 Motion to Amend or Modify the Amended Judgment. Matthew Keeven also filed a Motion to Amend the Amended Order and Judgment on January 19, 2017. Responses were filed thereto. These motions were fully briefed, noticed, called and heard in a hearing held on February 23, 2017. The court thereafter denied the motions.
The power of the trial court to set aside or amend previous orders is subject only to the qualifications that it must give the parties reasonable notice, allow them to be heard, and act upon reasonable grounds and not arbitrarily. State ex rel. Kairuz v. Romines, 806 S.W.2d 451, 455 (Mo. App. E.D. 1991) ; State ex rel. Stoffer v. Moore, 628 S.W.2d 637, 644 (Mo. banc 1982). Here, we find the trial court acted well within its authority on this matter. Bentz's contention the parties did not have notice or an opportunity to be heard on this issue prior to the court's decision is without merit for all of the reasons above. Point I is denied.
Point II
In his second point, Bentz contends the trial court erred in ruling both the Trust and FLP terminated upon Joseph H. Keeven's death because unless there is a specific termination date in the trust, a trust does not terminate until the trustee gives a final accounting and conveys trust property to the beneficiaries. Bentz maintains because the Trust has not yet terminated, an act of withdrawal has not yet occurred by the FLP's general partner under Section 359.451.
Bentz asserts a trust does not terminate until the trustee gives a final accounting and conveys trust property to the beneficiaries, citing Shannon v. Johnson, 741 S.W.2d 791, 794 (Mo. App. E.D. 1987) ("Generally, a trust terminates when the trustee gives a final accounting and conveys the trust property to the beneficiaries."). However, the event triggering the winding up of a trust such that a final accounting can be made and trust property distributed to the beneficiaries is also referred to as a termination of the trust. In the facts and circumstances of this case, the Joseph H. Keeven Trust clearly terminated upon Joseph H. Keeven's death. Article IV of the Trust provides "after the death of the grantor, all of the assets in the trust estate [which are not required for payment of taxes, debts and expenses as set forth in Article III] shall be distributed in seven (7) equal shares to the [beneficiaries]." Bentz tries to argue the word "after" does not have to mean immediately, but could mean some time later, after the Trust continues to conduct some more business. This is not a natural and plain *740 reading of the language of the Trust, and does not comport with the intentions of the Grantor.
As Grantor and Trustee, Joseph H. Keeven named, in the event of his death, two of his children as successor co-trustees to conduct the winding up of the Trust's business, which commonly includes the payment of the Trust's debts, taxes and expenses, prior to distribution of its remaining assets. This is set forth in Article III, and is the boilerplate language of the necessary business of winding up a trust upon its termination, not a purpose justifying a continuation of the Trust's activities in business, as Bentz attempts to urge in his construction of Article III. Debts, taxes, and expenses must be paid before the remaining assets of the Trust can be distributed in inheritance, divided equally seven ways between Joseph H. Keeven's seven children, the beneficiaries of the Trust. The terms of the Trust clearly set this out and Bentz's arguments to the contrary seek to misrepresent the terms of the simple standard revocable trust in this case created by a parent-grantor as a mechanism to pass on his estate to his beneficiary-children upon his death. Bentz distorts the definition of terms such as "after" and "termination" from the way in which they are commonly understood and used in the administration of a trust like the one at issue. "When the time for termination of a trust arrives, the trustee continues in that capacity throughout the period of the winding up and distribution of the trust property." American Cancer Soc., St. Louis Div. v. Hammerstein, 631 S.W.2d 858, 864 (Mo. App. E.D. 1981). "While concluding the trust, the trustee is charged with exercising care and skill to preserve the trust property until distribution." Id. The length of time required to complete this process depends on the circumstances. Id. at 865. It may be lengthened, for example, by litigation. Id.; 4 A. Scott, The Law of Trusts § 345.1 (3d ed. 1967).
Bentz concludes his argument in summary by reiterating that misplaced quote from Shannon and using it to promulgate his argument that the Trust does not terminate essentially until the current trustee, i.e., Bentz, decides it does, by giving a final accounting and conveying the Trust property to the beneficiaries. This argument is completely contrary to the plain language of the Trust document and actually seeks a result which would put Bentz in the position of the Grantor and original Trustee under Article II, "Administration of Trust During Lifetime of Grantor." It would give Bentz power to decide when it is time to wind up the Trust, in total contraindication to the trial court's sixty-page original judgment and subsequent amendments, addendums, and orders, in which the court constantly reminds Bentz as trustee to move forward and wind up the administration of the Trust with all deliberate speed. For four years, Matthew Keeven as successor trustee mismanaged the Trust for his personal benefit and continued to use it and property of the FLP to his own personal advantage in complete contravention of his fiduciary duties, directly leading to this extensive litigation presided over with great care, fairness, expertise, thoroughness, and attention to detail by the trial court to determine and rectify the damage to the estate caused by the original successor trustees. After setting the administration of the estate in order and proceeding with Bentz in replacement trustee capacity, we find it appropriate to advise Bentz to expeditiously wind up the business of this family's trust pursuant to the trial court's direction and within the confines of its orders, judgment, and oversight without further delay.
Point II is denied.
*741 Matthew Keeven Cross-Appeal
All three of Matthew Keeven's points on cross-appeal concern the trial court's award to the Trust of profits he generated from the Trust and FLP properties for himself in violation of his fiduciary duties while serving as successor co-trustee of the Trust. The trial court carefully reviewed the evidence presented by the parties, including Matthew, in assessing the amount to be charged against Matthew and awarded to the Trust. Matthew requested in his post-trial motion to further amend the Judgment in light of the trial court's amendment by interlineation changing one finding of the original judgment, paragraph 10, which originally stated:
"10. The Trust is the Managing Partner, General Partner and a Limited Partner of the FLP."
to stating in the Amended Judgment:
"10. The FLP dissolved on August 18, [2010] upon the death of Joseph H. Keeven and the termination of the Joseph H. Keeven Trust."
Matthew reasons since the trial court determined the FLP dissolved upon the termination of the Trust at Joseph H. Keeven's death, then the court's assessment of profits Matthew wrongly generated from FLP property should be deducted from the total amount of the award entered against him.
This reasoning is erroneous for several reasons. First, if the trial court apportioned out profits Matthew generated from the FLP properties, those profits would not go back to Matthew, but rather still would go to the estate. The Trust and FLP terminated and dissolved, respectively, simultaneously. However, there remains the business of winding up the Trust and the FLP, which both comprise the entire estate to be divided in its entirety seven equal ways among the seven Keeven siblings as beneficiaries under the Trust and as seven equal limited partners of the FLP. Intrinsically, such an apportionment by the court would be a useless and meaningless endeavor, as well as further depleting the assets of the estate by additional litigation.
Second, Matthew Keeven admits in his brief that while he and Patricia acted as successor co-trustees of the Trust, they were also acting in the capacity of general and managing partners of the FLP. See Combined Brief of Respondent/Cross-Appellant Matthew Keeven, page 6. Bentz is now acting as successor trustee and personal administrator of the estate, and thus is acting in the capacity of general and managing partner of the FLP for the purposes of winding up the business of the Trust and the FLP for final distribution of the assets of both to the seven beneficiaries and limited partners. Thus, the damages assessed against Matthew Keeven and awarded to the Trust will be divided in seven equal ways.
Matthew Keeven has suffered no prejudice from the error he alleges, because no damages would be awarded back to him, but rather reapportioned then divided and distributed seven equal ways. He breached his fiduciary duty in regard to both the Trust and the FLP for approximately four years after their termination and dissolution. While he was charged with winding up their business and distributing the assets, he made no move to do so with regard to either entity, but rather conducted business with regard to both and pocketed the proceeds for his own benefit instead of for the benefit of the beneficiaries of the Trust and the limited partners of the FLP.
Matthew Keeven also failed to file the transcript from the ten-day trial in which he alleges error. Several findings of the Judgment culminating from that trial in which he alleges error contain the admissions *742 he made at trial while testifying as to his activities with regard to profits he derived from FLP property and retained for himself that belonged to the Trust. These statements attributed to him that would be contained in the transcript are in direct contradiction to his allegations in his points on appeal. His failure to file a transcript precludes this Court from reviewing his allegations of error on appeal, and is further a violation of Rule 81.12 (a) and (c). Rule 81.12 provides:
(a) Contents of Record on Appeal. The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision. It is divided into two components; the legal file and the transcript.
...
(c) Transcript.
(1) Duty of Appellant to Order Transcript. Within ten days after the notice of appeal is filed, appellant shall order the transcript, in writing, from the reporter or from the clerk of the trial court if the proceedings were recorded by means of an electronic sound recording.
For this reason alone, Respondent Harry Keeven's motion to dismiss Matthew Keeven's appeal is well taken.[3] We also find, however, Matthew Keeven's three points on appeal to be without merit on their face, for the previously mentioned reasons. Points I, II, and III of Matthew Keeven's cross-appeal are denied as being without merit, for the reasons hereinbefore stated. Harry Keeven's motion to dismiss is therefore denied as moot.
Conclusion
The trial court's Findings of Fact, Conclusions of Law, Order and Judgment of July 29, 2016, as amended by its Order and Judgment of December 20, 2016, is affirmed.[4]
Robert G. Dowd, Jr., P.J., and Kurt S. Odenwald, J., concur.

All rule references are to Mo. R. Civ. P. 2016, unless otherwise indicated.

All statutory references are to RSMo 2000, unless otherwise indicated.

Additionally, Matthew Keeven's points on appeal fail to state the "wherein" and "why" of the trial court's alleged error as required by Rule 84.04(d).

Harry Keeven's Motion for Attorney's Fees on Appeal in the amount of $16,639.32 is granted and assessed against the Trust.